## STATE, EX REL. GEAKE ET AL., *v.* FOX, COMPTROLLER.

[No. 19,666.    Filed February 26, 1902.]

CONSTITUTIONAL LAW.—*Legislative Control of Fire Department of Municipality.—Amendment of Ft. Wayne Charter.*—The legislature has no constitutional authority to place the management of the fire departments of municipal corporations under the control of boards appointed by the Governor. *p. 130.*

SAME. —*Legislative Control of Police and Fire Departments of Cities.— Invalidity of Act.*—An act of the legislature, placing the police and fire departments of a certain class of municipalities under the control of a board appointed by the Governor, is not valid as to the police provision, where the provisions relating to the police department are so connected and dependent on those relating to the fire department that the act must be taken as a whole. *p. 140.*

From Allen Circuit Court; *E. O'Rourke,* Judge.

Mandamus by the State on the relation of William Geake and others, as commissioners of the board of public safety for the city of Ft. Wayne, against Joseph V. Fox, comptroller, to compel the approval and filing of their bonds. From a judgment in favor of defendant, the relators appeal. *Affirmed.*

*W. L. Taylor,* Attorney-General, *R. S. Taylor, J. B. Harper, W. Leonard, E. Leonard, W. J. Vesey, O. N. Heaton, Merrill Moores* and *C. C. Hadley,* for appellants.

*J. M. Barrett, S. L. Morris, A. Zollars, C. H. Worden, F. E. Zollars, H. Colerick* and *W. H. Shambaugh,* for appellee.

HADLEY, J.—Claiming to act by authority of a statute approved March 7, 1901 (Acts 1901, p. 132), the Governor appointed the relators commissioners of the board of public safety for the city of Fort Wayne, to take charge of the police and fire departments. The act required the commis-

sioners to execute bonds for the faithful performance of their official duties, to be approved by and filed with the comptroller. Relators tendered proper bonds, and appellee, as comptroller, refused to approve and file them solely on the ground that the act was unconstitutional. Thereupon the relators filed their application for a writ of mandamus to compel appellee to approve and file their bonds. Demurrers were sustained to the application and alternative writ. The only question involved is the constitutionality of that part of the act which relates to the appointment of the board of public safety.

So far as important to the decision of the case, the provisions in controversy are, in substance, as follows: The government of all cities having more than 35,000, and less than 49,000, population (which applies only to the city of Fort Wayne) shall be accomplished by six executive departments,—finance, law, public works, public safety, assessment and collection, and public health and charity. No other executive or administrative department shall be established in such city. The heads of said departments, except the department of public safety, and of assessment and collection (the latter to be administered by county officers), shall be appointed by the mayor. The department of public safety to be in charge of a board of three commissioners, who shall have been residents and voters of the city for three years, and who shall be appointed by the Governor, and serve four years, and until their successors are appointed and qualified; this board shall have the care and management, supervision, and exclusive control of all matters relating to the fire and police force, fire alarm, telegraph, erection of fire escapes, inspection of buildings and boilers, market places and food sold therein, pounds and prisons, and shall have power to purchase, at the expense of the city, all necessary supplies and apparatus, and make all repairs needed in its department, and each shall receive for services $400 per annum, payable quarterly out of the funds

of the city. It shall be the duty of the city attorney to advise the board, but should he refuse, or the board be of opinion that the best interests of the city would be subserved by employing other counsel, the board may, if it deems it necessary, employ any attorney resident of the city to act for it, and any sum due said attorney for such services shall be determined by said board and paid by the city. The board shall appoint a clerk to keep their accounts, who shall also be the clerk of the municipal court, and of the superintendent of police. It shall detail some member of the police force to be bailiff of the municipal court. It shall appoint a chief of police, and chief of fire department, and all officers, detectives, and patrolmen of the police force, and all officers and employes of the fire department; not more than one-half of such employes, excluding the chiefs, shall belong to the same political party. Such board shall also appoint a weigh master, market-master, poundmaster, and such other officials as it shall find necessary for the department, and within certain limits fix the salaries and compensations of all appointees, and it is made the duty of the common council to provide for payment of all departmental expenses out of the funds of the city.

Relators assert that the legislature has power to take away from cities the management of their fire departments as well as their police departments, and ask us to modify or overrule the cases of *State, ex rel.,* v. *Denny,* 118 Ind. 382, 4 L. R. A. 79; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426, 4 L. R. A. 93, and *State, ex rel.,* v. *Denny,* 118 Ind. 449, 4 L. R. A. 65. Appellee contends that this court, in the cases named, explicitly and correctly decided that the legislature could not deprive a city's inhabitants of local self-government, and that the maintenance and control of a fire department is an element of local self-government.

We approach a consideration of the subject with that hesitation which is incident to a knowledge that the question has been, heretofore, discussed pro and con, by judges of

this and other courts of distinguished ability, and that the principal reasons in support of and against the rule as adopted in this State, have been forcibly and logically presented. Only the great importance of the subject, and the earnest insistence of appellant's able counsel that this court has been resting in error for twelve years, induces us again to enter upon its general review.

I.  The following preliminary propositions may be deemed as settled in this State:

1.  When a party assails an act of the General Assembly as being prohibited by the Constitution, the burden is upon the assailant to establish his charge clearly, and beyond reasonable doubt. *Larned* v. *Elliott,* 155 Ind. 702; *State, ex rel.,* v. *Burke,* 154 Ind. 645; *State, ex rel.,* v. *Menaugh,* 151 Ind. 260, 43 L. R. A. 408; *Townsend* v. *State,* 147 Ind. 624, 37 L. R. A. 294, 62 Am. St. 477; *State* v. *Gerhardt,* 145 Ind. 439, 33 L. R. A. 313.

2.  Aside from the restrictions of the State and federal Constitutions, and the laws and treaties passed and made pursuant thereto, the General Assembly is unfettered in the exercise of legislative power. *State, ex rel., v. Menaugh,* 151 Ind. 260; *State, ex rel., v..McClelland,* 138 Ind. 395; *Hancock* v. *Yaden,* 121 Ind. 366, 6 L. R. A. 576, 16 Am. St. 396; *Robinson* v. *Schenck,* 102 Ind. 307; *Mount* v. *State, ex rel.,* 90 Ind. 29, 46 Am. Rep. 192; Constitution, §1, Art. 4.

3.  The question as to whether a law is politic, or expedient, or necessary, or wise, or unwise, belongs exclusively to the General Assembly, and not to the courts. *Jamieson* v. *Indiana, etc., Co.,* 128 Ind. 555, 12 L. R. A. 652; *State, ex rel.,* v. *Kolsem,* 130 Ind. 434, 14 L. R. A. 566; *Parker* v. *State, ex rel.,* 132 Ind. 419; *State, ex rel., v. McClelland,* 138 Ind. 395; *State* v. *Gerhardt,* 145 Ind. 439.

4.  The legislature has power to provide that the police force of municipal corporations shall be controlled by a

board appointed by the Governor. *State, ex rel.,* v. *Denny,* 118 Ind. 382; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426; *Slate, ex rel.,* v. *Denny,* 118 Ind. 449.

5. If a part of a statute is valid, and a part invalid, courts will uphold the valid part, unless the provisions of the act are so mutually connected with, and dependent upon, each other as conditions, considerations, or compensations for each other as to warrant the belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not have passed the residue independently. *State, ex rel.,* v. *Denny, supra.*

II. These propositions bring us to the principal question, namely: Has the legislature constitutional authority to place the management of the fire department of municipal corporations under the control of boards appointed by the Governor? It is well to note at the beginning that this question does not challenge the right of the State to supervise the power of municipal bodies so far as it relates to subjects of public concern, such as the preservation of the peace, the construction and care of public streets, sewers, and the like, but the inquiry here is restricted to the power of the legislature to strip a town or city organization of all right to manage in its own way the exclusively private property it is authorized to acquire. In other words, may the General Assembly, for the purpose of permitting an increase of local comfort and welfare, authorize a city to levy taxes upon its own inhabitants, and therewith provide engine-houses, engines, horses, hose, ladders, hospitals, libraries, markets, charities, public halls, and parks, all for the exclusive use, and at the exclusive expense, of the city, and, having once acquired those things according to the tastes, ability, and judgment of those who are required to pay for them, may the State, with constitutional approval, capriciously step in and turn out the city's chosen custodians and employes, and place its own commissioners in charge, with power to change what the city has selected, to buy and sell,

State, *ex rel.*, *v.* Fox.

to contract debts, to appoint to office, to make employments, to fix salaries, and charge all costs and expenses to the city? That the statute in question authorizes acts with respect to the city's government which at first blush appear unjust and oppressive furnishes the court no justification for declaring the law invalid, and it must be upheld, and referred back to the people who made it, for correction, unless it clearly appears that the acts which give rise to the injustice are of themselves without constitutional sanction. As we have heretofore stated, the act complained of here is the State's interference with the city's control of its own fire establishment. The power to do this is affirmed on the one hand to exist, because not in terms forbidden by the Constitution, and denied on the other as being inimical to the spirit and fundamental principles of our government, which the Constitution is designed to subserve. It is an historical fact that the first settlers of this country were induced to hazard the unknown in the hope that they might escape the oppressions of a government concentrated in a single man, and find a country where all civil power should reside in the people, and be exercised by the people alone in determining their modes of government. It was the right to participate; the right to be equally potential with every other one, in establishing governing laws and in the selection of ruling officers, which had been imperfectly allowed in the old, that allured the sturdy spirits of Europe to the new world to found a government of their own,—a new government, which in the main should be the antithesis of the old, and which should vouch the largest individual freedom consistent with a community of interests, and afford exemption from restraint, not self imposed. The first comers' love of freedom, which had been intensified by their hatred of tyranny, found expression in the simplest forms of local self-government, in the towns and villages of New England. Self-government is free government, was the cherished principle that permeated all classes and communities. It was

taught in the schools, the churches, and town meetings. Incorporated communities practiced it without restriction or question, and, as population increased, and cities, boroughs, counties, and states sprang up, the right was carefully protected, fostered, and observed, until it may be said that for two hundred years before the adoption of our Constitution the right of local self-government had been the heart, the soul, the life of our political system. The members of the constitutional convention could not have been exempt from this general sentiment, nor ignorant of popular attachment to the principle as essential and fundamental to our governmental plan, and it must therefore be presumed that the convention, in constructing the Constitution, and the people in adopting it, had the existence of such conditions, and their continuance, in view. Cooley's Con. Lim. (5th ed.), p. 45; *State, ex rel., v. Brunst,* 26 Wis. 412, 7 Am. Rep. 84; *People v. Lynch,* 51 Cal. 15, 24 *et seq.,* 21 Am. Rep. 677; *People v. Porter,* 90 N. Y. 68; *People v. Common Council,* 28 Mich. 228, 15 Am. Rep. 202; *People v. Albertson,* 55 N. Y. 50.

As said in *Rathbone v. Wirth,* 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408, "When the validity of legislation is brought in question, it is not necessary to show that it falls appropriately within some express, written prohibition contained in the Constitution. The implied restraints of the Constitution upon legislative power may be as effectual for its condemnation as written words, and such restraints may be found either in the language employed or in the evident purpose which was in view, and the circumstances and historical events which led to the enactment of the provision as part of the organic law." See, also, *Page v. Allen,* 58 Pa. St. 338, 98 Am. Dec. 272; *Middleton v. Greeson,* 106 Ind. 18; *United States, etc., Co. v. Harris,* 142 Ind. 226, 231; *State Board v. Holliday,* 150 Ind. 216, 233, 42 L. R. A. 826.

And it should be borne in mind that the Constitution does

not pretend to create our State government, nor to be the source of our laws and liberties. It is not a grant of right to the citizen, and amounts to little more than the placing in permanent form the outlines of the political system that had theretofore been tried and approved by immemorial usage. "Modes of life, modes of thought, conceptions of rights and duties, and the essential conditions of existence," writes an eminent author, "precede constitutions, whose chief value is to give organic security to such antecedent and existing conditions and rights as are deemed to be vital and fundamental." Dillon's Mun. Corp. (4th ed.), §3a.

In the very opening lines of our Constitution it is declared, as a sort of beacon light to its interpretation, "that all power is inherent in the people, and all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well being." These are words of warning that the people are the only source of power, then and thereafter, as they had been before the adoption of the Constitution, and that in providing means under the new instrument for the maintenance of free government, or self-government, which means the same thing, and which had been the established system since the first settlement of the State, it should be recognized that the authority of the governed is essential. With these abstract, suggestive, declarations standing at the head of the Constitution, it is incredible that the framers meant, by implication, to tolerate an encroachment upon the right of a citizen to a voice in the laws and officers set over him. The granting of such authority would be the surrender by the people of power to protect the life and integrity of the government itself as based on the consent of the governed, and it will not be assumed that the people parted with rights so vital to their happiness and welfare without very strong and direct expression of such intention. It is no argument to say that State government is local self-government, in that every elector participates therein. So it is in matters pertaining

to the State at large.. But it is not so as to matters purely local, and in which the people of the State outside the locality have no interest. In municipalities chartered by the State, excepting as to their functions as governmental agencies, the right of the inhabitants of the corporation to rule their own local concerns within reasonable legislative regulation, without interference from any outside, disinterested power, is as sacred and absolute under our long continued system as the right of the citizens of the State to make their own laws and select their own officers without interference from the general government. The size of the civil district amounts to nothing. The principle is the same as applied to any organized division of territory in vogue as a factor in our political establishment, and requires in every case of special local interest that the ruling power shall reside, and be exercised; within the residential limits of the people interested in the subject-matter.

From the general scope of the Constitution it is clear that the convention had in contemplation a continuance of municipal governments, and, in the absence of any express restrictions or modifications, it will be presumed that they had in view their continuance with all the rights and attributes they then possessed. Recognition of their existence is made in many paragraphs, among them the following: The General Assembly shall not pass local or special laws, vacating roads, town plats, streets, alleys, and public squares. Constitution, Art. 4, §22. All county, township, and town officers shall reside within their respective counties, townships, and towns. Constitution, Art. 6, §6. All State, county, township, and town officers may be impeached. Constitution, Art. 6, §8. Vacancies in county, township, and town officers shall be filled in such manner as may be provided by law. Constitution, Art. 6, §9. All property shall be taxable except such only for municipal, etc., purposes as may be exempted by law. Constitution, Art. 10, §1. No municipal corporation shall become in-

debted in excess of two per cent. of its taxables. Constitution, Art. 13, §1. All acts of incorporation for municipal purposes shall continue in force under the new constitution until repealed or modified. Clause fourth, Schedule.

When these references were written there had been no instance in the history of the State where the legislature, or any other department of the State government, had undertaken to interfere with municipal self government in relation to matters purely local, and, the right having been recognized and enjoyed from time immemorial, there seems to have existed no fact that would call for an expression upon the subject.

That the framers of the Constitution meant to enlarge, rather than abridge, the right of popular choice is evidenced in the fact that they declared the absolute right of election by the people of certain public officers before that time appointive, or elective by the General Assembly, notably, the Secretary, Auditor, and Treasurer of State, the Judges and Clerk of the Supreme Court, the presiding judges of circuit courts, and county surveyors; while on the other hand there is not an instance that has come to our notice where a public officer is made appointive, that was elective before.

It should be remembered that municipal corporations are instituted by legislative authority for a two fold purpose: (1) As state governmental agencies, to assist the State in their localities in the administration and execution of such laws as pertain to the people of the State at large; (2) for the promotion of certain exclusively local interests which are peculiar to concentrated population, and in which the State, except in conferring the power and regulating its exercise, has no more right of interference than it has with the private affairs of its several inhabitants.

With respect to the first, there are important powers delegated to municipalities which concern every citizen of the State, and for the proper exercise of which the State cannot abdicate responsibility by committing them to local officers.

It is very clear, from the tenor of the whole instrument, that the Constitution makers never intended that the territorial divisions recognized,—that is, counties, townships, and towns, should govern themselves, independently of State supervision or of State supremacy, but in every matter which affects the safety, morals, health, or general welfare of the people at large, or of a considerable number of them, there is undoubtedly reserved in the State the power to supervise, control, and even coerce, local officers in the discharge of public duties, and even to send its own agents into any organized district, if necessary, to enforce a public right, or accomplish a public benefit.    For instance, every citizen has the right to travel the public highways,—those in cities and towns, where, according to common usage, they are made, dug up, and improved by local action, as well as those in rural districts.    In every part of these highways the traveler is entitled to the State's protection from violence, and from dangerous situations.    For the preservation of the public health, for the prevention of disease and epidemics, each inhabitant has an interest in the proper drainage of lands, and in the suppression of all unsanitary conditions, whether rural or urban, and without regard for territorial boundaries, and the right to look to the State for protection against these evils so far as the same may be legally afforded. Likewise the enforcement of the State's criminal and revenue laws are of equal importance to all.    In all these, and kindred things, the setting up of corporation lines forms no barrier to the strong arm of the State in safeguarding every public interest.

With respect to the second, each municipality organized under State authority is a distinct entity and factor in the State government, as an individual is an entity and factor. And while the Constitution and laws impliedly give the individual the right to acquire property for his own benefit, and guarantees to him its enjoyment, the same power that gives the municipality the right to exist gives also, in ex-

press terms, the right to contract and acquire such property as it may deem beneficial or conducive to the greater comfort and happiness of its citizens, such as parks, halls, hospitals, arts, charities, and appliances for protection against fire. These are strictly private possessions, lawfully held. They are bought and paid for by the people of the city. They neither add to, nor diminish the burdens of the State, or any part of it, outside the corporation. The city's absolute, separate, and distinct tenure of such property is not different from the holding of like property by an individual. Can the property of one be sequestered by the State and not of the other?

As applied to this particular case the citizens of Fort Wayne had provided themselves with such means for protection against fire as they approved, and thought they could afford. Does it make any difference to the citizens of Marion county, or to the citizens of Allen county, outside the city limits, what these means are? The law does not require the city to provide any protection against fire. The matter is wholly voluntary. And in exercising its judgment in the matter, if the city has chosen hand or chemical engines propelled by volunteers, or if it has provided the most powerful steamers, and strongest and fleetest horses, and paid for them by contributions from its own citizens, by what right may the State arbitrarily assume the possession and control, to the exclusion of the city? In whose behalf does the State act in such a proceeding? There is a vast difference in the right to make laws and create offices for the uniform management of municipal property, and the right to fill the offices and exercise the management. The one is legislative; the other executive.

Again, the statute before us provides that the Governor shall appoint three commissioners who shall constitute the board of public safety, and that this board shall have the care, management, supervision, and exclusive control of all matters relating to the fire and police departments, fire

alarm, telegraph, erection of fire escapes, inspection of buildings, boilers, market places and food sold therein, pounds and prisons, and shall have power to purchase at the expense of the city all necessary supplies and apparatus, and make all repairs needed in its departments. The chief value of property is in the unrestricted right of possession and control; and when the State sends its agent into the city of Fort Wayne and ousts the city from the possession of its property and takes "exclusive control", what is the act but sequestration and the taking of property without compensation?

Another view: The city of Fort Wayne, as a municipal corporation, has no separate representation in the law making body of the State. Therefore, when the State, by its commissioners, summarily assumes exclusive control of the city's fire department, and, without the advice or consent of the city, appoints officers, creates and fills new offices, employs firemen, fixes salaries and compensations, purchases supplies and appliances, contracts debts and requires the city council to levy taxes upon the city's inhabitants to meet such costs and expenses, what is this but taxation without representation?

The power contended for by appellants is far reaching. If the legislature may empower the Governor to appoint a commission of his own choosing to take dominion and management of the fire establishment of the city of Fort Wayne, without the consent of the city, then the Governor may, from the same source of authority be empowered to appoint, through his commission, of one man for that matter, every municipal officer, except judicial, in every town and city of the State. He is a brave advocate who will undertake to maintain that the people intended, by implication, to delegate to their legislative servants the power to provide for the appointment, as caprice might dictate, or party interest require, of the mayor, members of the common council, and every other governing officer of a city, except those invested

with judicial functions.    To thus deprive the people of a locality of the right to choose their own immediate local officers is to rob them of their freedom, and to defeat one of the great ends for which the government was established.

The power to create the commission is supposed to arise from the following provisions of the Constitution: "Such other county and township officers as may be necessary shall be elected or appointed in such manner as may be prescribed by law."   Constitution, Art. 6, §3.   "All officers whose appointments are not otherwise provided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law."   Constitution, Art. 15, §1.

The first of the above provisions relates exclusively to county and township offices.   With respect to the second it should be observed that the language is not, "All officers whose *selections* are not otherwise provided for."    There are two distinct methods of selecting officers recognized by the Constitution, one by election, and one by appointment; and specific provisions as to both are prescribed in many instances.   The language of this provision is clear, and we perceive no reason for holding that it means other than what it says, that all officers whose *appointments* are not otherwise provided for may be chosen in such manner; that is, by election or appointment, as may be prescribed by law. The spirit pervading the entire Constitution, as we have seen, is toward elections by the people, and we cannot do that spirit violence by reading into the instrument authority to subject elective offices to appointment, but must accept the language in its customary sense, and as a further manifestation of intent to extend, rather than restrict, the right of popular choice.

Judge Dillon, in his great work on municipal corporations at page 100 (4th ed.) §58a, in referring to the Jameson, Blend, and Holt cases which we are asked to overrule, says: "The Supreme Court of Indiana has sustained the right of local self-government in that State in opinions of marked

ability, vigor, and learning, which hold to be unconstitutional two acts of the legislature which deprives certain classes of municipalities of the usual rights of municipal control and local regulation."

. We unhesitatingly conclude that the doctrine of the cases here referred to is sound, and should be adhered to. In addition to the authorities cited in the former cases, reference is made to *People* v. *Howland,* 155 N. Y. 270, 49 N. E. 775, 41 L. R. A. 838; *People* v. *Porter,* 90 N. Y. 68; *Attorney-General* v. *Board of Councilmen,* 58 Mich. 213, 24 N. W. 887, 55 Am. Rep. 675; Dillon's Mun. Corp. (4th ed.), §3a p. 7, §9 p. 24, §11 p. 27; Cooley's Con. Lim. (2nd ed.), pp. 33, 34, 36, 58, 59 and 174.

III. It is claimed that if it is determined that the act is invalid as the same relates to the fire department, it should be upheld so far as it applies to the police department. In this we cannot concur. The act provides that the three commissioners appointed by the Governor shall have the exclusive control of the fire and police departments. They are given a fixed salary for the management of both departments. They are required to give single bonds for the performance of their duties in both departments. They are to appoint a clerk at a stated salary, who shall keep their accounts in both departments and be clerk of the municipal court, and the various provisions of the act as they relate to the board of public safety are so mutually connected and dependent upon each other as to conditions and considerations, as to warrant the belief that the legislature intended them as a whole, and that if all cannot be carried into effect the legislature would not have passed the residue independently. Hence all the provisions thus mutually dependent must fall together. *State, ex rel.,* v. *Denny,* 118 Ind. 449-475, 4 L. R. A. 65, and authorities there cited.

Judgment affirmed.

Gillett, J., was absent during the consideration and decision of this case.