INDIANA ALCOHOLIC BEVERAGE COMM. *v.* JAMES H. BAKER, ET AL.

[No. 172A48. Filed August 21, 1972. Rehearing denied September 26, 1972.]

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellant.

*Stephen M. Coons, James W. Bradford, Bradford & Coons,* of Indianapolis, for appellees.

LOWDERMILK, J.—This action originated by way of hearing on application for liquor store permits to operate package liquor stores in Indianapolis by nineteen applicants, appellees herein, before the Alcoholic Beverage Commission of Indiana.

From an adverse ruling by the said Commission the applicants, appellees herein, timely filed a petition for review in the Marion Superior Court, Room 3. Appellant answered the petition, filed a transcript of the administrative proceedings, and was then granted a change of venue from the county on its motion. The review of the proceedings was had in the Johnson Circuit Court.

The findings of fact of the Alcoholic Beverage Commission, hereinafter referred to as ABC, were substantially as follows:

1. That the petitioners, appellees herein, filed applications for package liquor store dealers' permits for the respective premises of each of the parties, which premises are within the City of Indianapolis, Marion County, Indiana.

2. That the Commission has knowledge of the Acts of 1935, as amended, being Burns (1956 Repl.) § 12-518, which authorizes the Commission to issue liquor dealer's permits.

3. That the Commission has knowledge of the Acts of 1951, as amended, being Burns (1970 Supp.) § 12-537, which reads as follows:

"Only one (1) package liquor store dealer's permit shall be granted in each incorporated town or city for each five thousand (5,000) persons or fraction thereof as determined by the last decennial United States Census."

4. That the Commission has knowledge of the Acts of 1969, the same being Burns (1970 Supp.) § 48-9503, which reads, in part, as follows:

"For the purposes of determining population of the Consolidated City as respects any allocation or right to receive funds under this Section based upon population, and for all purposes under Acts 1935, c. 226, and Acts 1956, c. 386, the population of the Consolidated City shall be deemed the population of the Fire Special Service District. For purposes of Acts 1935, c. 226, all parts of the Consolidated City outside the Fire Special Service District and not inside the limits of an Included Town shall be deemed outside the limits of a city or town."

5. That the Commission has knowledge of the Acts 1969, the same being Burns (1970 Supp.) § 48-9441, which reads, in part, as follows:

"(b) 'Fire Special Service District' shall mean a special service district in which the consolidated city fire force created under this article shall have jurisdiction. At the effective date (January 1, 1970) of this article, such fire special service district shall be coterminous with the boundaries of the first class city as the same shall have existed on the day preceding the effective date of this act but may be expanded by the city-county council in accordance with this article. At the time that the boundaries of such fire special service district become coterminous with the boundaries of the consoliated city, the fire special service district may be dissolved by the director and such department shall be a department of the consolidated city."

6. That the population of the Consolidated City of Indianapolis as determined by the 1970 decennial census is 744,624.

7. That the population of the City of Indianapolis for the purpose of granting dealer's permits for package liquor stores is the population of the Fire Special District of the City of Indianapolis as determined by the 1970 decennial census.

8. That the population of the Fire Special Service District of the City of Indianapolis as determined by the 1970 decennial census is less than 500,000.

9. That the Commission had at that time issued 104 package liquor store dealer's permits in the City of Indianapolis, which number of permits supports a population of 520,000 using the ratio provided in the statute noted in Finding Number 3.

10. That the maximum number of package liquor store dealer's permits which may be issued in the City of Indianapolis already has been issued.

ABC then entered its order on the above findings denying applications of all named applicants, appellees herein, for permits for premises within the City of Indianapolis.

After trial by the Johnson Circuit Court, ABC filed its notice of intention to appeal and timely filed its motion to correct errors, after which the court entered modified findings of fact and conclusions of law and modified its judgment. On January 18, 1972, the motion to correct errors was overruled "to the extent that the errors asserted were not cured by the modification of the Findings of Fact, Conclusions of Law and Judgment on January 6."

The modified findings of fact and conclusions of law stated thereon by the trial court are as follows:

### "FINDINGS OF FACT

"1. That the plaintiffs and each of them with the exception of the plaintiff R. R. and P. Associates, Inc. are individuals who reside in Marion County, Indiana, and that R. R. and P. Associates, Inc. is an Indiana Corporation with its principal place of business in Marion County, Indiana, and its stock issued and outstanding owned by residents of Marion County, State of Indiana.

"2. That on September 24, 1971, the plaintiffs filed their applications for permits to retail package liquor goods in the City of Indianapolis, Indiana, with the defendant Indiana Alcoholic Beverage Commission which accepted said applications for filing.

"3. That a hearing was held on September 24, 1971, notice having been waived by all parties thereto, before the Indiana Alcoholic Beverage Commission, said Commission being represented by all of its members and also the Attorney General of the State of Indiana by virtue of his deputy, David Kreider.

"4. That on September 24, 1971, the plaintiffs offered evidence in support of the applications filed with the defendant to retail package liquor in Indianapolis, Indiana.

"5. That on September 30, 1971, the defendant Indiana Alcoholic Beverage Commission entered its Order denying the applications of the plaintiffs for package liquor store dealer's permits in Indianapolis, Indiana.

"6. That on October 6, 1971, the plaintiffs filed their petitions for Review in the Marion Superior Court, Room No. 3, which Petition for Review was verified and filed within the time provided for review of the defendants decision in denying the plaintiffs applications for retail package liquor store dealer permits in Indianapolis, Indiana. Also, on said date the plaintiffs filed their cost bond in the amount of One Thousand Dollars ($1,000.00) and also served a copy of their Petition for Review upon the defendant and upon the Attorney General of the State of Indiana as provided by law and also requested a transcript of the proceedings before the Indiana Alcoholic Beverage Commission on September 24, 1971.

"7. That upon motion timely made by the defendant this cause was venued from the Marion Superior Court, Room No. 3 to this Court, and the notice of hearing was given in this cause on or about November 16, 1971, for a hearing on December 16, 1971.

"8. The plaintiffs applications for package liquor store dealer's permits were filed upon the respective premises which were all within the City of Indianapolis, Indiana:

| | |
|---|---|
| Riley Jay Bradford | 5214 N. College |
| James H. Baker | 2805 E. 55th Place |
| Charles H. Keever | 2327 E. 52nd. |
| Morris Meshulan | 2913-15 E. Tenth |
| Evagene J. Bradford | 1031 E. 54th. |
| Carl S. Cowan | 3721 Southeastern |
| Frank G. Marren | 6010 Brookville Rd. |
| Alma W. Buckner | |
| Hattie S. Arnold | 621 S. Illinois |

| David Neal Lasiter | 230 E. Ohio |
| Richard L. Tetrick | 225 E. Iowa |
| John H. Heeter | 163 E. 25th St. |
| Michael D. Cohen | 3001 N. Keystone |
| Michael D. Cohen | 2420 N. Meridian |
| Michael D. Cohen | 343-5 Virginia Ave. |
| Charles E. Johnson | 1546 N. Carrollton |
| R. R. and P. Associates, Inc. | 4440 N. Keystone |
| Abe L. Klapper | 3220 N. Sherman |
| Abe L. Klapper | 2363 N. Meridian |
| William T. Sommer | 3002 E. 56th St. |

"9. At all times referred to herein, there existed a law in the State of Indiana, being Burns' Ind. Ann. Stat. Sec. 12-537, which provides as follows:

" 'Only one (1) package liquor store dealer's permit shall be granted in each incorporated town or city for each five thousand (5,000) persons or fraction thereof as determined by the last decennial United States Census.'

"10. That the official United States government decennial census for the year 1970 showed the population of the city of Indianapolis to be 744, 624, persons.

"11. That the time of the filing of the applications by the plaintiffs herein, there were outstanding 104 permits issued by the State of Indiana to permittees to retail package liquor in the City of Indianapolis, which permits are outstanding in the same number as of this date.

"12. That the defendant Indiana Alcoholic Beverage Commission is charged with the authority of regulating alcoholic beverages in the State of Indiana which in part exists of authorizing the issuance of alcoholic beverage permits as provided by Burns' Ind. Stat. Sec. 12-518.

"13. That at the time of the filing by the filing by the plaintiffs of their applications for package liquor dealer's permits in the City of Indianapolis, there were openings for package liquor permits in the City of Indianapolis in a number in excess of the total number of applications filed by the plaintiffs, such number being computed by dividing the population of the City of Indianapolis, as determined by the 1970 decennial census of 744,624 persons by 5,000 persons as provided by law, for a total of 149 openings for permits with 104 permits issued and outstanding on the date of the filing of the applications by the plaintiffs.

## CONCLUSIONS OF LAW

"1.   That the Court has jurisdiction over the parties and subject matter herein.

"2.   That the law is with the plaintiffs and against the defendant.

"3.   That the defendant Indiana Alcoholic Beverage Commission in entering its order dated September 30, 1971, was in error in denying the plaintiffs applications for permits as aforesaid for the following reasons.

"a.   The determination of the Commission was contrary to law.

"b.   That the determination of the Commission was arbitrary, capricious and unlawful.

"c.   That the determination of the Commission was not supported by substantial evidence, and in fact was supported by no evidence in its finding at the time of the filing of the applications by the plaintiffs, that the population of the City of Indianapolis, was less than 500,000 persons, said record of said proceedings being void of any evidence of population other than the 1970 decennial census which showed the population of the City of Indianapolis to be 744,624 persons which census governs exclusively the number of alcoholic beverage permits to retail package liquor in towns and cities under the laws of the State of Indiana.

"4.   That the Petition for Review by the plaintiffs in all respects should be granted and the defendant be ordered to accept all applications of the plaintiffs herein, process said applications as provided by law."

The modified judgment of the trial court is as follows:

"IT IS THEREFORE, ORDERED that the Order of the defendant, Indiana Alcoholic Beverage Commission dated on or about September 30, 1971, is hereby reversed, set aside and held for naught, and the Petition for Review filed by the plaintiffs herein is granted.

"IT IS FURTHER ORDERED that the defendant Indiana Alcoholic Beverage Commission accept the applications of the plaintiffs herein and process the same forth with.

"IT IS FURTHER ORDERED that certified copy of this Order be served upon the Indiana Alcoholic Beverage Commission."

Appellant-ABC incorporates in its brief by reference the modified findings of fact of the trial court, as hereinabove set out, except number 13.

Appellant-ABC sets out the fact that in 1969 the General Assembly passed the consolidated First Class Cities and Counties Act (Acts 1969, ch. 173, IC 1971, 18-4) under which the City of Indianapolis as it was previously constituted was merged into a Consolidated City consisting of all Marion County except for certain excluded areas, which, before consolidation, were within cities other than first class cities or within towns having a population in excess of 5,000 inhabitants by the 1960 census. IC 1971, 18-4-1-2, 18-4-1-3. A Fire Special Service District was formed with boundaries coterminous with the boundaries of the prior City of Indianapolis. IC 1971, 18-4-12-34. This is now commonly known and referred to as the Unigov Act and when mentioned hereafter in this opinion shall be referred to as "Unigov."

Appellant-ABC argues that the trial court based its determination that new package liquor store permits were available on census data which includes the entire Consolidated City of Indianapolis. It further contends that there is an express statutory provision that in matters relating to the issuance of such permits the population of the City of Indianapolis is that of the Fire Special Service District and not that of the Consolidated City. And it is its further contention that that statute and the quota statute can and should be construed *in pari materia,* and that the trial court totally ignored the one statute and its judgment is contrary to law and constitutes reversible error.

There is a further contention that the statutes, construed together, leave no evidence to support the determination of the trial court and that such lack of evidence supports the negative finding of the ABC. They further contend that this court may take judicial notice of census data which indicates the population of the Fire Special Service District to be such that no new permits are available.

Appellant-ABC states that specifications numbered 4 and 6 of the motion to correct errors dealt with the issue of the scope of relief granted and substantially were cured by the modified findings of fact and conclusions of law and modified judgment, and they waive any error as to said two specifications.

Appellant-ABC, in its brief, states that the specifications of error relied upon ". . . all relate to the one central issue of the case, determination of which will control the outcome of the entire case. That issue is whether the relevant population for the City of Indianapolis is that of the Consolidated City formed in 1969 under provisions of IC 1971, 18-4-1-2, 18-4-1-3 or of the 'old city,' the Fire Special Service District as set out in IC 1971, 18-4-12-34." We agree with appellant-ABC on their statement of the one issue which we are to pass upon and shall confine this opinion to that one issue.

Plaintiffs-appellees, in response to this contention, rely on Ind. Ann. Stat. § 12-537 (Burns 1971 Supp.), *supra;* they further contend that the 1970 decennial census showed the population of the City of Indianapolis to be 744,624 persons and that according to the records of the ABC there were 104 package liquor store dealer's permits issued and outstanding when the applicants tendered their applications. And, further, based on the 1970 population, 45 additional permits were available and that all applications for permits were filed upon locations which were all within the corporate limits of the City of Indianapolis.

The petitioners-appellees further contend that the trial court held that the population of the Consolidated City should be used since the definitional section of the Unigov Act, Ind. Ann. Stat. § 48-9102 (f) (Burns 1971 Supp.) reads as follows, to-wit:

" 'Consolidated city' shall be a body corporate created by this article, and including within its boundaries all of the territory of a first class city and of the county, except for the territory located in excluded cities; Provided, however,

that certain departments and special taxing districts of the consolidated city may have jurisdiction as provided in this article in territory greater or less than such territorial boundaries. The consolidated city shall be a city and shall be a city of the first class within the meaning of all laws of the state."

ABC, in finding of fact number 6, determined the 1970 decennial census showed Indianapolis with a population of 744,624, which it now contends is irrelevant if the two statutes in question are to be construed *in pari materia.*

The petitioners-appellees argue that the two statutes in question do not deal with the same subject matter, as the Fire Special Service District statute is titled "Finance" and is concerned with revenue for the Fire Special Service District, while the quota statute is directly concerned with the issuance of package liquor dealer's permits.

Petitioners-appellees contend that the statutes should not be construed *in pari materia* since the language of the quota statute is not unclear, is not ambiguous, nor is it indefinite. 26 I.L.E. *Statutes,* § 130, p. 341, states the limitation on the rule of construction of statutes *in pari materia,* to-wit:

"It must not be overlooked that the rule requiring statutes *in pari materia* to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and that it cannot be invoked where the language of the statute is clear and unambiguous."

Burns 1963 Replacement § 48-9441, "Fire Division-Definitions" defines, under specification (b) "Fire Special Service District," in part, as follows:

"(b) 'Fire Special Service District' shall mean a special service district in which the consolidated city fire force created under this article shall have jurisdiction."

Black's Law Dictionary, 4th ed., defines the words *"in pari materia"* as follows:

"Upon the same matter or subject. Statutes *in pari materia* are to be construed together. *State* v. *Gerhardt*, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313."

Said dictionary also defines *pari materia* as follows:

"Of the same matter; on the same subject; as, laws *pari materia* must be construed with reference to each other."

In *State* v. *Gerhardt, supra*, the court said:

"When a number of statutes whenever passed relate to the same thing or general subject matter, they are to be construed together and are *in pari materia.*"

The later case of *State Board of Tax. Comm., ex rel.* v. *Daviess Circuit Court* (1967), 249 Ind. 580, 583, 230 N. E. 2d 761, held, in passing on the matter of statutes being *in pari materia:*

"It appears that § 64-1608, *supra,* was passed by the legislature in 1961 (Acts 1961, ch. 319, § 1907), and that § 64-1621, *supra,* originated with the 1919 legislature (Acts 1919, ch. 59, § 177) and was amended last in 1921. (Acts 1921, ch. 222, § 5). All statutes relating to the same subject matter are to be construed together, *Starr* v. *City of Gary* (1934), 206 Ind. 196, 188 N. E. 775; but in a case where two or more statutes deal with the same matter in different language, the latest expression of the legislature is controlling. *Hamilton County Council* v. *State ex rel. Groff* (1949), 227 Ind. 608, 87 N. E. 2d 810."

It is now our responsibility to determine whether the said two statutes are or are not *in pari materia.*

The Fire Special Service Statute requires the population of the Fire Special Service District to be used "for all purposes under Acts 1935, c. 226 . . . [12-501—12-530]. . . ."

The above is set out in § 48-9503, Burns 1971 Supp., which reads, in part, as follows:

". . . For purposes of determining population of the consolidated city as respects any allocation or right to receive funds under this section based upon population, and for all

purposes under Acts 1935, c. 226 [§§ 12-301—12-402, 12-501—12-530, 12-601—12-642, 12-701—12-711, 12-801—12-815, 12-901—12-924], and Acts 1965, c. 386 [§§ 12-503b—12-503e], the population of the consolidated city shall be deemed the population of the Fire Special Service District. For purposes of Acts 1935, c. 226, all parts of the consolidated city outside the Fire Special Service District and not inside the limits of an included town shall be deemed outside the limits of a city or town."

Appellant-ABC argues that for purposes relating to the issuance of package liquor store licenses the population of the city of Indianapolis should be that of the Fire Special Service District rather than that of the Consolidated City. It further contends the provision of IC 18-4-14-1, Burns § 48-9503, 1971 Supp., entitled "Receipt of Funds" was considered by the ABC in its hearing and was included in the ABC findings of fact and was presented to the trial court in a brief and in oral argument. The trial court, they say, completely ignored the existence of § 48-9503 and that this, in short, is error here alleged as basis for reversal of the trial court.

Appellant-ABC further contends that the population figure used by the trial court, that of the Consolidated City, is of no relevance to the case and if the irrelevant figure is ignored, then there is no evidence whatsoever that the population of the Fire Special Srvice District is more than 520,000. It further contends that under such a lack of evidence to show availability of permits, the ABC action, in effect, a negative judgment, was justified.

Considering the *in pari materia* status of the two statutes in question, namely, §§ 48-9503 and 12-537, and having carefully read each of said statutes, we have necessarily come to the conclusion that § 48-9503 pertains to municipal corporations and the funding of the same and refers to Acts of 1935, ch. 226, [§§ 12-501—12-530] and pertains solely to the issuance of permits to sell liquor, vinous spirits, alcoholic beverages, et cetera, and does not refer to the quota or necessary number of persons in a certain area

to qualify for the issuance of the divers permits covered by said sections. The Acts of 1965, ch. 386, §§ 12-503b to 12-503e pertains to the number of permits limited for beer and spiritous beverage dealers, limiting the number of permits issued in incorporated towns and cities or unincorporated towns for a specific number of persons residing therein as determined by the last decennial census of the United States of America, subject to regulations provided for obtaining such permits.

Petitioners-appellees contend that the legislature did not intend that a "special service district" or a "Fire Special Service District" be treated or considered as a city within the Consolidated City, but, rather, that the legislature intended the organization of such districts for the purpose of providing property owners with specific services, such as fire or police protection. They state that such districts are not independent and autonomous city-states, but are rather dependent upon the Consolidated City for the administration and control of their delegated responsibilities. They contend further, that these districts may be expanded or restricted in their area of jurisdiction by appropriate action of the legislative branch of the Consolidated City. (Citing IC 1971, 18-4-12-36, being Ind. Ann. Stat. § 48-9443 [Burns 1971 Supp.])

They further contend that IC 1971, 18-4-14-1 is clear and unambiguous in its language; that the statute deals with the allocation of funds received by the consolidated city, its service, its taxing districts from state or federal aid and by virtue of local taxation; that for the purpose of receiving funds, this statute specifically refers to other statutes which provide the method or formula of distribution of revenues from these sources. Included in this enumeration are specific sections of the Alcoholic Beverage Act, but not the quota statute, Burns § 12-537, *supra*.

They further state that "It is a rule of law in Indiana that when certain items are specified or enumerated in a statute, then, by implication, other items not so specified are excluded."

*Duda* v. *New Prairie United School Corporation* (1967), 140 Ind. App. 528, 224 N. E. 2d 327, 335.

Sutherland Statutory Construction, 3rd Edition, Vol. 2, § 5208, p. 548, states the following; "A statute of specific reference incorporates the provisions referred to from the statute as of the time of adoption without subsequent amendments, unless the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute. In the absence of such intention subsequent amendment of the referred statute will have no effect on the reference statute. * * * In a statute of specific reference only the appropriate parts of the statute referred to are taken."

The Supreme Court of Indiana, in the case of *State ex rel.* v. *Leich* (1906), 166 Ind. 680, 78 N. E. 189:

"The general rule is that when a statute adopts a part or all of another statute by a specific and descriptive reference thereto, such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute unless it does so by express intent." (citing cases)

The Court stated further in *State ex rel.* v. *Board, etc.* (1911), 175 Ind. 400, 94 N. E. 716, that:

"It is well settled that one statute may adopt another, by a specific and descriptive reference thereto, and the effect is the same as if the adopted statute had been written into the adopting one, but when so adopted, only so much of the adopted act is in force as a part of the adopting act as is applicable thereto." (citing cases)

Applying the definition of *pari materia* as above set out, this court must necessarily come to the conclusion that the statutes relied upon by appellant-ABC have no qualification for us to consider them *in pari materia*.

The case of *Duda* v. *New Prairie United School Corporation, supra,* was one wherein two school corporations were engaged in litigation, one attempting to enjoin the enrolling of all

school children living in the territory involved by the other and to enjoin the LaPorte Auditor and Treasurer from distributing tax monies from territory annexed to the City of LaPorte, Indiana, to the LaPorte Community School Corporation. Appellants Duda and others appealed from the granting of said injunction. The question there was whether one of two statutes was effective to the exclusion of the other. From it, we make the comparison to the *pari materia* issue in the case at bar.

This court, in deciding the Duda case, *supra,* stated that the statutes in effect at the time the case of *Ft. Wayne Community Schools* v. *State ex rel., etc.* (1959), 240 Ind. 57, 159 N. E. 2d 708, arose, were the same as applicable statutes in the *Duda* case. In that case the Supreme Court held that for school purposes the area or territory annexed by the civil city of Fort Wayne, as in an annexation proceedings, continued and remained subject to the jurisdiction of the appellee, New Haven Public schools, and did not, by reason of civil annexation, come within the jurisdiction of the Fort Wayne School Systems.

The court then discussed the fact that the day of the one room schoolhouse was gone and that that had necessitated getting away from school districts with boundaries of civil units, and the many attempts of the General Assembly to deal with school consolidation are but expressions of legislative intent in this direction.

The court, speaking further in *Duda, supra,* said:

"We are also bound by the principle that only the General Assembly specifies certain factors or matters in a statute, that by implication other factors or things not so specified, are excluded."

In the case at bar we are of the opinion that the statutes setting forth the quota or number of people necessary in a city or town or other area to qualify for the issuance of some form of permit by the ABC, namely, Burns § 12-537, is clear

and unambiguous on its face and the rule *in pari materia* cannot be involved.

The General Assembly did not include the quota statute, Burns § 12-537, when it specified which sections were to be included for purposes of population under the Fire Special Service District. The two statutes do not deal with the same subject matter and for this reason, as well as for the reason that Burns § 12-537, *supra,* is clear and unambiguous on its face, the two statutes cannot be construed *in pari materia.*

For the above reasons we are of the opinion that the trial court correctly determined the population of the Consolidated City of Indianapolis to be 744,624, as taken at the last decennial United States census and correctly ordered appellant-ABC to accept the applications of petitioners-appellees for package liquor store permits at the places designated in their respective petitions, inasmuch as there were 45 openings for the same, in compliance with Burns § 12-537, *supra,* for package liquor dealer permits.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 286 N. E. 2d 174.