CITY OF HAMMOND, LAKE COUNTY, A MUNICIPAL CORPORATION *v.*
THE INDIANA HARBOR BELT RAILROAD COMPANY

[No. 2-875A215. Filed March 15, 1978.]

*Saul I. Ruman,* of Hammond, for appellant.

*Harold Abrahamson, Robert G. Berger*, of Hammond, for appellee.

## CASE SUMMARY

BUCHANAN, J.— The City of Hammond, Indiana (City) appeals an order of the Public Service Commission of Indiana (Commission), authorizing the closing and separation of streets located within the City, alleging that the statute[1] authorizing the Commission to order such a closing is unconstitutional, that the evidence was insufficient to authorize the closing, that the Commission erred in denying the City's Petition for Rehearing and Petition to Stay the Order, and

---

1. IND. CODE 8-6-7.7-3, *infra.*

that the Commission erred in allowing an unlicensed engineer to testify as an expert witness.

We affirm.

## FACTS

The facts and evidence most favorable to the Order of the Commission are:

On January 9, 1975, the Indiana Harbor Belt Railroad Company (Railroad) filed with the Commission a verified Petition for Permission and Authority to Close and abolish two grade crossings[2] located on the right-of-way of the railroad in Hammond (City).

The petition alleged that these crossings, located at Howard and Maywood Avenues, were little used, were not required by public convenience, constituted an undue burden upon public safety, and that the closing would be in the public interest.

Following various motions,[3] a hearing was held by the Commission on May 15, 1975, at which time it was determined that Maywood and Howard Avenues, the subject of the proposed closings, were "extra hazardous" and should be closed.

Evidence favorable to the Order indicated that Howard and Maywood Avenues, both two lane north-south city roads lie approximately eight hundred (800) feet apart, and are between major north-south arterial separated grade highways. Approximately eight hundred (800) feet west of Howard Avenue is Calumet Avenue, an arterial highway. Maywood Avenue is east of Howard Avenue and eight hundred (800) feet east of Maywood is Columbia Avenue, the other major separated grade arterial highway (a separated grade crossing is one which channels vehicular traffic over or under the railroad tracks).

Howard Avenue, tests revealed, was closed due to train traffic two hundred seventeen (217) times, for a total of twenty-nine (29) hours and one (1) minute, between 10:30 A.M., February 18, 1975,

2. The term "Grade Crossing" is defined by Ind. Code 8-6-7.7-1 to mean "a crossing of any railroad and any public highway, street or roadway, at grade."

3. The City filed a Motion to Limit Testimony and a Motion to Dismiss. Both were denied.

and March 3, 1975, and ninety-eight (98) times, for a total of seven (7) hours and fifty-six (56) minutes, between 8:00 A.M., and 8:00 P.M., March 5, 1975. Peak motor vehicular traffic on Howard Avenue generally occurred between 10:00 to 11:00 A.M. and 1:00 to 2:00 P.M. Peak train traffic on Howard Avenue usually occurred between 9:00 o'clock A.M. and 12:00 o'clock A.M., and 3:00 o'clock to 6:00 o'clock P.M. The average volume of traffic on Howard Avenue during a twenty-four (24) hour period was 99.5 trains and 485.5 motor vehicles. Tests revealed that few, if any, emergency vehicles used Howard Avenue during these periods of time.

The other affected grade crossing, Maywood Avenue, averaged between ninety-four (94) and ninety-seven (97) train crossings during a twenty-four (24) hour period. Peak vehicular traffic on Maywood usually occurred betwen 7:00 o'clock to 9:00 o'clock A.M. and 2:00 o'clock to 4:00 o'clock P.M. Peak train traffic was between 11:00 o'clock A.M. to 2:00 o'clock P.M. The volume of traffic on, or over, this road averaged 83.5 trains and 1,195.5 motor vehicles during a twenty-four (24) hour period. Like Howard Avenue, few, if any, emergency vehicles used Maywood Avenue during the times that tests were conducted.

There was also evidence that these crossings had been the scene of numerous automobile-train collisions and other types of accidents. Though sparse and contradictory, the record indicates that approximately ten (10) vehicular railroad collisions occurred between 1970 and 1975.

Mr. John Dring, director of the Railroad Department of the Commission, testified that a "hazard index" of four thousand was used by the Commission to justify the installation of automatic train-warning devices.[4] The "hazard index" for Howard and Maywood Avenues was 49,858 and 126,498, respectively. This index for the two crossings, Mr. Dring explained, rendered these crossings "extremely hazardous" and justified, indeed compelled, their closing or separation.

---

4. The index number was computed by multiplying the number of train crossings by the number of automobile crossings within a given time.

Following the hearing, the Commission issued an order which may be summarized as finding that the streets to be closed were public roadways protected by flasher signals and short-arm gates, and that they were heavily traveled by motor vehicular and train traffic.[5] The Order also found that there were alternate highway routing patterns sufficient to serve the community should these streets be closed, and that they should be closed as the present situation rendered them inaccessible to the public for inordinate lengths of time, and that the enhancement of public safety would result by closing these streets.

The Commission then ordered the closing and abolishment of these grade crossings, and ordered the Railroad to bear the expense of such closing and maintenance of metal barricades barring public travel.

Following the denial of the City's Petition for Rehearing, and Order to Stay Pending Appeal, the City seeks review of the Commission's order.

## ISSUES

The City presents four (4) issues for our resolution:

(1) Is the authority given the Commission by IND. CODE 8-6-7.7-3 (Sec. 3) to close and abolish public roadways an illegal infringement upon the power of the City to establish and control such public roadways (pursuant to IND. CODE 18-1-1.5-8 (Sec. 8)).

(2) Was the Commission's finding that the public safety outweighed the public convenience in ordering the closings, contrary to the evidence and the law?

(3) Did the Commission err in overruling the City's Petition for Rehearing and the City's Petition to Stay the Order?

(4) Did the Commission err in allowing an unlicensed engineer to testify as an expert witness?

---

5. The City contended closing Howard and Maywood Avenues would require traffic to use Calumet or Columbia Avenue, which would render areas previously served by Howard and Maywood Avenues vulnerable in the event of an emergency. There was testimony that, on at least one occasion, Calumet Avenue has been closed due to heavy snow, and traffic was re-routed to Howard and Maywood, which remained open.

*ISSUE ONE*

*CONCLUSION*—IND. CODE 8-6-7.7-3 (Sec. 3), giving the Commission the power to order a public way closed and abolished, is not an illegal usurpation of the power of a municipality to establish and control public ways.

*PARTIES' CONTENTIONS*— The City contends that the authority of the Commission to close grade crossings is merely an incidental authority to the primary purpose of the Commission, which is to oversee the service offered by regulated industries, and the furtherance of intrastate commerce. Thus, as an incidental power, this authority is secondary to the authority and power of a municipal corporation to construct and maintain public roadways, an inherent police power specifically granted by "home rule".

The Railroad responds by arguing that the legislative act[6] (Sec. 3 herein) authorizing the Commission to order crossings closed was a constitutional exercise of legislative authority.

Legislative enactments are presumed to be valid, *Smith v. Indianapolis St. R. Co.* (1901), 158 Ind. 425, 63 N.E. 849, and to be constitutional. *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763; *First Savings & Loan Assoc. of Central Indiana v. Furnish* (1977), 174 Ind. App. 265, 367 N.E.2d 596. If two or more statutes relate to the same general subject matter, they are to be construed together and are *in pari materia. State v. Gerhardt* (1896), 145 Ind. 439, 44 N.E.2d 469; *Indiana Alcoholic Beverage Commission v. Baker* (1972), 153 Ind. App. 118, 286 N.E.2d 174. If possible they must be construed in harmony to give effect to each. *New York Central Railroad Co. v. Public Service Commission of Indiana* (1958), 237 Ind. 544, 147 N.E.2d 547; *Porter Memorial Hospital v. Harvey* (1972), 151 Ind. App. 299, 279 N.E.2d 583.

The statute on which the Commission relied in entering its order closing these grade crossings is Ind. Code 8-6-7.7-3, which provides:

*The Public Service Commission* of Indiana *may order* legally *closed* and abolished a public way, within the limits of a railroad right-of-way, *any grade crossing* then in existence at the time the

6.   IND. CODE 8-6-7.7-3, note one, *supra*.

Commission assumes jurisdiction of the matter, *upon a finding that the enhancement of public safety resulting from such closing will outweigh any inconvenience* caused by increased circuity of highway routes. Such an order by the Commission may be issued either in connection with, or independent of, an order relating to automatic train-activated warning signals. *The authority of the Commission to legally close and abolish grade crossings shall be in addition to any authority by law granted to* other state agencies of *local units of government* to close and abolish grade crossings. Upon the issuance of such an order by the Commission, the railroad or railroads involved shall physically remove the crossing from the tracks, and the governmental unit maintaining the highway shall remove or barricade the approaches thereto. (Emphasis supplied)

(Herein referred to as Sec. 3.) Observe the broad sweep of the words, "The authority of the Commission to . . . abolish grade crossings shall be in addition to any authority . . . granted to . . . local units of government."

The City nourishes its position that the City's police power is paramount by pointing to IND. CODE 18-1-1.5-8, which provides in part:

A City shall have power to establish, construct, maintain and control public ways which shall include, but not be limited to streets, thoroughfares, walkways, roads, bridges, tunnels, sidewalks and alleys[.]

(Herein referred to as Sec. 3.) It does give the City the power to "establish, construct, maintain and control public ways . . ." and in times gone by[7] has been construed to give municipal authorities almost unlimited control of streets and roads. *State ex rel. Evansville Independent Tel. Co. v. Stickelman* (1914), 182 Ind. 102, 105 N.E. 777. The City argues Sec. 8 is a specifically granted police power and, as such, should take precedence over, to use the City's term, a

---

7. Local autonomy was indeed once the rule in Indiana. *State ex rel. Jameson v. Denny* (1889), 118 Ind. 382, 21 N.E. 252; *Geake, infra.* While these cases have not been specifically overruled, recent decisions have steadily eroded the theory of local autonomy to the point of extinction. *City of South Bend v. Krovitch* (1971), 149 Ind. App. 438, 273 N.E.2d 288. Further, it has been held that cities are subject to the authority of the Commission, even where that authority divests a city of powers previously enjoyed. *Graham Farms, Inc. v. Indianapolis Power & Light Co.* (1968), 249 Ind. 498, 233 N.E.2d 656; *Public Service Commission v. Indianapolis* (1922), 193 Ind. 37, 137 N.E. 705.

power that is "merely incidental to the primary purpose of the Public Service Commission"—a distinction conceived without benefit of authority.

While the City has the general power to control roads within its borders, this power, like others possessed by a municipality, is secondary to the power vested in the State. *So. Ry. Co. v. Harpe* (1944), 223 Ind. 124, 58 N.E.2d 346. Indeed, as an instrumentality of the State, a City derives *all* its powers *from* the State and, unless a power is expressly or impliedly given, it must be assumed that the power is non-existent. *So. Ry. Co., supra; City of Evansville v. Byers* (1964), 136 Ind. App. 448, 202 N.E.2d 399.

The City relies only on *State ex rel. Geake v. Fox* (1902), 158 Ind. 126, 63 N.E. 19, as authority for the proposition that Sec. 3 is unconstitutional. *Fox* decides no such thing. In fact it recognizes the authority of the State to "supervise the power of municipal bodies so far as it relates to subject of public concern", including the "construction and care of public streets . . . ". 63 N.E. at 20.

Furthermore, Sec. 8 is specifically limited by IND. CODE 18-1-1.5-1 which provides, in part:

Powers of Cities—General—Limitations.—All cities shall have the powers set forth in subsequent sections of this chapter [18-1-1.5-1—18-1-1.5-30], which powers may be exercised within their territorial limits, and in such additional areas as may be specified herein, to the extent deemed by the appropriate branch, officer, department or agency of any city to be necessary and desirable in the public interest of its inhabitants. *Any such power may be exercised by a city under authority of this chapter only if and to the extent that such power is not by express provision denied by law or by express provision vested by any other law in a county, township or the state—. . . .* (Emphasis supplied)

(Herein referred to as Sec. 1.)

Construing these three unambiguous sections together, as we must (*Gerhardt, supra; Baker, supra*), we unavoidably arrive at the conclusion that Sec. 3, conferring authority on the Commission to abolish grade crossings in addition to the authority given local government units to do so, is controlling . . . providing the proper finding is made.

*ISSUE TWO*

*CONCLUSION*—The Commission's finding that the public safety outweighed the public convenience in ordering the closings was supported by substantial evidence.

*PARTIES' CONTENTIONS*—The City contends that the evidence was insufficient to sustain a finding that the closing would enhance public safety, and that such enhancement would outweigh public inconvenience.

The Railroad responds simply by arguing that substantial evidence supported the finding of the Commission.

It is the City's burden to demonstrate that the determination of the Commission was without substantial evidence to support it. *City of Evansville v. Nelson* (1964), 245 Ind. 430, 199 N.E.2d 703; *New York, C. & St. L. R. Co. v. Singleton* (1934), 207 Ind. 449, 190 N.E. 761; *City of Indianapolis v. Nickel* (1975), 165 Ind. App. 250, 331 N.E.2d 760.

There was evidence these crossings were heavily travelled by both motor vehicular and train traffic, that few emergency vehicles use them, that there had been numerous accidents there, and that each of these crossings had a high hazard index.

As to any inconvenience to the public, there was evidence that these crossings lay between two major north-south, grade separated, arterial highways approximately one-half mile apart.

Under these circumstances there was substantial evidence to support the Commission's finding that enhancement of public safety would outweigh any inconvenience (pursuant to Sec. 3).

*ISSUE THREE*

*CONCLUSION*—It was not an abuse of discretion for the Commission to deny the City's Petition for Rehearing and to Stay Proceedings.

*PARTIES' CONTENTIONS*—The City argues that the Commission erred in its refusal to hear evidence offered by the City, in

its Petition for Rehearing, and that such evidence, even though it could have been heard before, should have been heard if that evidence was not duplicitous.

The Railroad responds that no rehearing is required when a party seeking to produce evidence could have presented it at the first hearing, and that there is no right to an order to stay pending appeal.

IND. CODE 8-2-7-6 provides, in part:

After a decision, order or requirement has been made by the Commission in any proceeding under this Act, any party thereto may make application to the Commission for reconsideration or rehearing of the same, or of any matter determined therein, and it shall be lawful for the Commission, *in its discretion*, to grant such reconsideration or rehearing if sufficient reason therefor be made to appear. (Emphasis supplied)

The City's Petition for Rehearing was based upon newly discovered evidence consisting of testimony that certain "senior citizens", living south of the railroad's right-of-way, would be substantially deprived of emergency access to areas north of the right-of-way should Howard and Maywood Avenues be closed.

Understandably the Commission, in denying the City's petition, found that this type of evidence was easily discoverable prior to the hearing, and that it was not the type of evidence which would likely result in a change of the Commission's order. *See* BOBBITT, Ch. 69, § 8.

The granting or denial of a Petition for Rehearing is discretionary with the Commission. *Odle v. Public Service Commission of Indiana* (1973), 156 Ind. App. 538, 297 N.E.2d 453; *Shannon v. Porter* (1965), 138 Ind. App. 253, 208 N.E.2d 193; *See also* BOBBITT, Ch. 41, §§ 3, 17.

In support of its argument that the Commission erred in denying its Petition to Stay the Order, the City refers us only to *Indiana Telephone Corp. v. Public Service Commission of Indiana* (1960), 131 Ind. App. 314, 171 N.E.2d 111, in which no stay order was entered.

The Commission did not abuse its discretion. *Odle, supra.*

*ISSUE FOUR*

*CONCLUSION*—The Commission did not err in admitting the testimony of an unlicensed engineer as an expert witness.

*PARTIES' CONTENTIONS*—The City claims error in the admission of expert testimony by an unlicensed engineer. The Railroad responds that it was within the sound discretion of the Commission to determine whether a witness has the requisite qualifications to testify as an expert.

The Commission permitted, over the objection of the City, the testimony of Paul Carter, who testified about his investigation and evaluation of the design, use and hazards of the crossings and alternate routes. His testimony consisted mostly of identifying photographs, maps, and other exhibits already in evidence. Carter was a registered land surveyor in Indiana, had a bachelor of science degree from the University of Illinois, and twenty-six (26) years of railroad experience.

The City objected on the basis that Mr. Carter was not registered or licensed to practice engineering in the State of Indiana, although it is uncertain as to the exact testimony claimed to be objectionable.

Generally, one may be an expert by training or by experience. *Offutt v. Sheehan* (1976), 168 Ind. App. 491, 344 N.E.2d 92. Whether a witness is permitted to testify as an expert is discretionary with the trial court. *McCraney v. Kuechenberg* (1969), 144 Ind. App. 629, 248 N.E.2d 171. Similarly, while there is no fixed standard by which the trial court may determine a qualification of an expert witness, his qualification is a matter which must rest largely within the discretion of the trial court. *State v. Vaughn* (1962), 243 Ind. 221, 184 N.E.2d 143; *Tomchany v. Tomchany* (1962), 134 Ind. App. 27, 185 N.E.2d 301.

As to the specific question as to whether an unlicensed engineer may be permitted to testify as an expert, there have been no cases on point in Indiana. However, it has been held that it is within the discretion of a trial court to permit opinion testimony by lay people even when such testimony concerns the ultimate issue. *Rieth-Riley Construction Co. v. McCarrell* (1975), 163 Ind. App. 613, 325 N.E.2d 844.

In general, administrative bodies are not bound by the strict rules of evidence. *Warren v. Indiana Telephone Co.* (1939), 217 Ind. 93, 26 N.E.2d 399; *CTS Corp. v. Schoulton* (1976), Ind. App., 354 N.E.2d 324; *Robinson v. Twigg Industries, Inc.* (1972), 154 Ind. App. 339, 289 N.E.2d 733; *Lewis v. Review Board of the Indiana Employment Security Division* (1972), 152 Ind. App. 187, 282 N.E.2d 876.

The City proffers neither a showing of prejudice nor authority for the proposition that it is reversible error to permit testimony under these circumstances.

The judgment is affirmed.

White, J. concurs.

Hoffman, J. (by designation) concurs.

NOTE—Reported at 373 N.E.2d 893.