CITY OF SOUTH BEND, ET AL. *v.* GEORGE KROVITCH, JR., ET AL.
[No. 1070A168. Filed September 30, 1971.]

*Shepard J. Crumpacker, Robert M. Parker*, of South Bend, for appellants.

*Joseph A. Roper, John J. Roper, Chapleau, Roper, McInerny & Farabaugh*, of South Bend, for appellees.

ROBERTSON, J.—In April of 1968, the Mayor of South Bend, by means of a press conference and memorandum to the fire and police departments of that city, announced a public safety program whereby certain firemen would be trained additionally as policemen and would perform certain police functions.

The plaintiff-appellees, being residents of the city of South Bend, and either firemen or policemen, or their wives, brought suit for injunctive relief against the implementation of the public safety program. After a hearing the trial court granted a temporary injunction which enjoined the appellees from:

"(A) . . . assigning, requiring, or directing any member and/or trainee of the South Bend fire force or fire depart-

ment to attend police training school for the purpose of, or in connection with, or relating to the implementation of a public safety program, or any kind of program, the effect of which is to combine in a member and/or trainee or the fire force or fire department the combined duties of a fireman and a policeman, and, further, from assigning members and/or trainees of the South Bend fire force or fire department to the exercise of the combined duties of both a fireman and a policeman;

"(B) From either expending or disbursing any monies or funds, or directing the expending or disbursing of same, in connecting with or related to the implementation of a public safety program, or any kind of program, the effect of which is to combine in a member, and/or trainee of the fire force or department, the combined duties of a fireman and a policeman;"

Shortly thereafter, a change of venue was taken. Some legal proceedings of no consequence to the questions raised in this appeal took place.

In March of 1970, the Board of Public Works and Safety, apparently recognizing the Mayor alone had no authority to implement a public safety program, adopted the following resolution which incorporated the Mayor's previous concept, the body of which reads:

"WHEREAS, the Board of Public Works and Safety of the city of South Bend, Indiana, is charged with the responsibility of controlling, supervising and governing the Fire and Police Forces of said city; and

"WHEREAS, said Board deems it expedient, pursuant to applicable law, to make certain changes in the present functions and operations of said Fire Force, which said Board deems to be in the best interests of all of the citizens and taxpayers of said city; and

"WHEREAS, said Board deems it advisable for firemen to receive some police training to enable firemen to better function in their primary assignment of fire fighting by enabling them to control traffic at or near fires, protect themselves from any person or persons who may attempt to prevent them from carrying out their duties, and to better enable them to protect the lives, person and property of the general citizenry; and

"WHEREAS, said Board deems it advisable to maintain active fire patrols within the primary response districts of certain companies;

"NOW, THEREFORE, BE IT RESOLVED:

"1. The Fire Chief of the City of South Bend, Indiana, is hereby directed and ordered to solicit from among the active firemen, volunteers to drive patrol cars within the primary response district of their respective fire companies.

"2. The Board of Public Works and Safety shall, from time to time, by resolution, order certain of the several fire companies within the City of South Bend, Indiana, to maintain active patrols within their respective response districts.

"3. The Fire Chief is further ordered and directed to require all new appointees to the fire forces and all present members of the fire force as may volunteer for and be needed to drive patrol cars, to attend police training school to receive such portions of police training as may be deemed appropriate by the Board of Public Works and Safety as a supplement to their fire fighting and education.

"4. Each fire company ordered to maintain an active patrol shall be charged with the responsibility of having not less than one of its members patrolling by car in the response district of said fire company at all times established by the Board of Public Works and Safety.

"5. Any member of the fire forces who has received such police training may be made a special police officer pursuant to existing Indiana statutes and may then exercise the duties of a special police officer while he is carrying on his duties as a fireman.

"6. The Board of Public Works and Safety shall from time to time make and promulgate rules and regulations for the government of firemen manning patrol cars and also of firemen who have been appointed special police officers. The duties of firemen assigned to patrol cars shall include, but not be limited to, the following: To respond to all fire alarms coming from their primary response districts; to keep a lookout for fires and unusual fire hazards; to make periodic inspections of buildings and businesses within their patrol areas, such as filling stations, supermarkets, and the like, to check on compliance with fire regulations; to report any suspicious or unusual activities observed within their patrol areas to the police department; to report any street defects or unsafe conditions observed to the street department; when not on a fire call, to report to the scene of any

automobile accident which occurs in their patrol area and assist the police forces by directing traffic or otherwise; to assist in the enforcement of traffic regulations to the extent time permits.

"7. This resolution shall become effective upon adoption by the Board of Public Works and Safety, but shall not be implemented until subsequent resolution of this Board."

Additional pleadings and affidavits were filed, as well as each party filing a motion for summary judgment in their behalf. Because a procedural error has been raised it will be helpful to detail the events as they occurred:

MARCH 25, 1970: Argument on summary judgment, with defendants being given 10 days to file a brief, and the plaintiffs an additional 5 days to reply.

APRIL 8, 1970: Defendants file brief.

APRIL 16, 1970: Plaintiffs file reply brief.

APRIL 20, 1970: Plaintiffs mail corrections of reply brief to trial judge.

APRIL 23, 1970: Trial judge receives corrections.

JULY 22, 1970: Trial judge overrules defendant's motion for summary judgment, sustains plaintiff's motion for summary judgment, and makes the temporary injunction permanent.

The appellant's motion to correct errors alleged three specifications, which, in substance, are:

1) The decision is contrary to law in that the court did not have jurisdiction to render a judgment pursuant to TR. 53.1 (which provides a 90 day time limit for holding an issue under advisement).

2) The court erred in granting plaintiff's and denying defendant's motions for summary judgment.

3) Plaintiffs were granted excessive relief in two respects, in that their motion for summary judgment did not seek enjoining of the March resolution of the appellants, and that it enjoins firemen and policemen from carrying out duties they had performed prior to the institution of the litigation.

The motion to correct errors was overruled, thus resulting in this appeal.

In determining which rule to apply to the procedural question raised by the appellant it is important to note that a local rule existed in the trial court to the effect that the old rules of procedure would apply to all cases on file as of December 31, 1969, unless one or both parties petitioned the court to the contrary.[1] This case clearly falls into that classification and there is no indication in the record of the parties petitioning the court as required by the then prevailing rules. That being the case, it is apparent the court was operating under Rule 1-13, as opposed to TR. 53.1, and acted accordingly. Rule 1-13 required "written application of any of the parties" to set into motion the process of withdrawing submission of the issue in question. Since there was no such application the city's proposition that the trial court did not have jurisdiction is not well taken.

In the consideration of the alleged error in the granting of plaintiff's motion for summary judgment and the denial of defendant's motion for summary judgment, it is necessary for this Court to resolve whether or not the board has authority to create the public safety program announced in its resolution of March, 1970. The answer lies directly within the proposition of whether "home-rule" exists in this jurisdiction. (Home-rule is local autonomy as distinguished from centralized state control over municipalities. 17 Ind. L.J. 375 [1942]). It is the opinion of this Court that the act of the board was beyond the authority conferred by the legislature and contrary to the law of this state as it now exists.

There was a time when local autonomy was the rule of law in Indiana. *The State, ex rel. Jameson et al.* v. *Denny, Mayor* (1889), 118 Ind. 382, 21 N. E. 252; *City of Evansville et al.* v. *The State ex rel. Blend et al.* (1889), 118 Ind. 426, 21 N. E. 267; *The State, ex rel. Holt et al.* v. *Denny, Mayor, et al.*

---

1. Even though counsel were from out of Marshall County, they were bound by local rules.

(1889), 118 Ind. 449, 21 N. E. 274; *State, ex rel.* v. *Fox* (1902), 158 Ind. 126, 63 N. E. 19. As appellant correctly points out, there is no later case specifically overruling the above cited cases, however, the bulk of decisions have eroded the local autonomy theory into a state of practical non-existence.

In determining the validity of a statute controlling the organization and operation of the New Albany Fire Department, the Court struck down the denial of local self-government theory, saying:

> ". . . We have read the Denny and Fox cases carefully, and under the particular facts then before the court, the reasoning announced seems to be sound, but we are not inclined to extend but to treat the doctrine followed in those cases as an exception to the almost universal rule that legislative power is limited only by the express inhibitions of the Constitution." *State ex rel.* v. *Morris, Mayor* (1927), 199 Ind. 78, 88, 155 N. E. 198, 202.

Said in another manner, and stating what we feel to be the dominant and current position:

> ". . . Municipal corporations are creatures of the state. They possess such powers only as are granted by the legislature in express words and those necessarily implied and incidental to those expressly granted, and those indispensable to the declared objects and purposes of the corporation, and to its continued achievements." (Citing authorities.) *Dunn, Auditor, et al.* v. *City of Indianapolis* (1935), 208 Ind. 630, 640, 196 N. E. 528.

With these basic propositions set forth it would be well to look closely into the board's contention that, absent any directive by the General Assembly to the contrary, they had the authority to establish the program in question. There has been judicial recognition of the implied or incidental power concept.

> ". . . This court has declared repeatedly . . . that municipal corporations are subordinate branches of the domestic government of the state and possess only those powers expressly

granted to them by the Legislature, those necessarily or fairly implied in or incident to powers expressly granted, and those indispensable to the declared objects and purposes of the corporation." *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 530, 177 N. E. 249.

The board operates pursuant to IC 1971 18-1-11-2, Ind. Ann. Stat., § 48-6102 (Burns 1963), the pertinent parts of which read:

". . . The board shall appoint a chief of police, a chief of the fire force and all other officers, members and employees of such fire and police forces, together with a market-master, station-house keeper, and other officials that may be found necessary for such department of public safety. The annual pay of all policemen, firemen and other appointees shall be fixed by ordinance of the common council; and it shall be lawful in such ordinance to grade the members of such forces and to regulate their pay, not only by rank, but by their length of service. . . . The commissioners, subject to ordinance, may also fix the number of members of such fire and police forces, and the number of appointees for other purposes. They shall, in like manner, divide such city into police precincts and fire districts; and they shall have power, subject to the laws of the state and the ordinances of the city, to make and promulgate rules and regulations for the appointment of members on such forces, and for their government: Provided, That such forces shall be, as nearly as possible, equally divided politically, and no member thereof shall be dismissed except for cause, as provided in the next section. The chief of police shall have exclusive direction and control of the police force and the chief of the fire force shall have exclusive control and charge of such fire force, subject to the rules, regulations and orders of the department of public safety. In time of peril, danger, riot, extensive conflagration, disorder, or the apprehension thereof, the chief of the fire force and the chief of the police force shall, for the time being, be subordinate to the mayor and obey his orders and directions, anything to the contrary in this act or in the ordinances of such city, or in the regulations or orders of such commissioners of public safety, to the contrary notwithstanding."

A reading of this statute clearly reveals a legislative intent to treat police and fire departments as two entities, each with

its exclusive jurisdictional area of responsibility. An inspection of Title 19, Article 1, of the Indiana Code of 1971, emphasizes the manner of treating the two departments separately. Even where referred to in the same section the nomenclature of "fireman and policeman" is ever-present. Thus, the public safety department concept, as visualized by the city, is thwarted.

> ". . . The powers exercised by the city must be consistent with the general laws and public policy of the state. Doubtful claims to power are resolved against the corporation." (Citing authorities.) *Local 26, Natl. Bro. of Op. Potters* v. *City of Kokomo* (1937), 211 Ind. 72, 79, 5 N. E. 2d 624.

With these guidelines we must now direct our attention to the Board of Public Works and Safety order of March, 1970, with an eye towards whether or not the court's granting of relief was excessive. The specified duties of: 1) responding to fires; 2) fire patrol; 3) attending police classes directly pertinent to increasing professional fire-fighting skills; 4) periodic fire hazard inspections; 5) and inspections for compliance with fire regulations, cannot be questioned as being an integral part of the fireman's job. On the other hand, traffic control and the enforcement of traffic regulations are within the purview of the police department. IC 1971 18-1-11-7, Ind. Ann. Stat., § 48-6110 (Burns 1963).

The problematic area of the March order is that which involves firemen becoming special police officers, for it is in this proposition the commingling of the respective responsibilities occurs. This Court is of the opinion that the city cannot require a fireman to qualify as a special policeman as a condition of employment, or continuing employment with the city.

The relief granted is excessive in that it enjoins, in part, what the law requires. This cause is reversed in part, and remanded for the permanent injunction to be modified to be consistent with this opinion, namely, the removal of the five

activities specified in a preceding paragraph from being an enjoined activity.

The trial court is further ordered to make an affirmative finding, assuming such to be the case, that there is no genuine issue as to any material fact as required when granting a summary judgment. See: *Singh* v. *Interstate Finance* (1969), 144 Ind. App. 444, 246 N. E. 2d 776.

Buchanan and Lowdermilk, JJ., and Sullivan, P.J., concur.

NOTE.—Reported in 273 N. E. 2d 288.