TIPPECANOE COUNTY, et al., Appellants (Defendants),

v.

INDIANA MANUFACTURER'S ASSOCIATION, et al., Appellees (Plaintiffs).

No. 79S02–0202–CV–118.

Supreme Court of Indiana.

March 6, 2003.

Thomas H. Busch, David W. Luhman, Hoffman, Luhman & Busch, P.C., Lafayette, IN, Mark J. Colucci, Kroger, Gardis & Regas, LLP, Indianapolis, IN, Attorneys for Appellant.

Brian P. Popp, Laszlo & Popp, P.C., Merrillville, IN, Attorney for Amicus Curiae.

Thomas M. Atherton, Offer Korin, G. John Cento, Katz & Korin, P.C., Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Certain taxpayers challenged Tippecanoe County's authority to hire a firm on a commission basis to audit personal property returns. The trial court held that the County lacked authority to take this action, that the arrangement violated confidentiality statutes, and that the contingency fee was impermissible. We reverse.

**Facts and Procedural History**

Indiana businesses self-report their taxable personal property annually. Such property is a substantial part of the tax base; In Tippecanoe County, it constitutes over thirty percent of total assessed property value.

Personal property returns are subject to audit, but by the year 2000, Tippecanoe County had not scrutinized any of these returns for seventeen years due to lack of staff expertise. In January 2000, the State Board of Tax Commissioners [1] notified county assessors that it had reduced its personal property auditing efforts, and encouraged local officials to undertake their own programs using either staff or outside firms.[2]

Tax Management Associates, Inc. (TMA) specializes in this service. The County hired TMA to audit 1999 and 2000 returns that reflected personal property

---

**1.** Effective January 1, 2002, the Board's responsibilities were divided between two newly-created agencies: the Department of Local Government Finance, which has tax collection authority (*See* Ind.Code Ann. §§ 6–1.1–30–1.1, 14 (Burns 2001)), and the Indiana Board of Tax Review, which will review property tax appeals (*See* Ind.Code Ann. §§ 6–1.5–1–3, 4–1 (Burns 2001)).

**2.** People engaged for this purpose are sometimes called "tax ferrets." *See Fleener v. Litsey,* 30 Ind.App. 399, 404, 66 N.E. 82, 84 (1903).

greater than $50,000, for a fee of thirty-five percent of collections resulting from the audits. This fee covered TMA's expenses, including traveling to other states to examine accounting records as necessary.

Taxpayers selected for audit received letters signed by the county assessor, advising them that TMA staff would be in touch to schedule audits and asking for cooperation in providing relevant records. Certain Taxpayers asked the Tippecanoe Superior Court to enjoin this procedure. On cross-motions for summary.judgment, the trial court gave the Taxpayers judgment in their favor on all claims. We accepted jurisdiction of the resulting appeal under Indiana Appellate Rule 56(A).

▆▆ Arriving here without any facts in dispute, this appeal presents only questions of law, which we review *de novo. Carie v. PSI Energy, Inc.,* 715 N.E.2d 853 (Ind.1999). We read statutes as a whole to determine legislative intent. *See Superior Const. Co. v. Carr,* 564 N.E.2d 281 (Ind. 1990).

## I. County's Authority to Hire Contractors: Dillon Rule Abolished

▆▆ There was a time when municipal law in most of the country was dominated by the Dillon Rule, which was:

[A] municipal corporation possesses, and can exercise, the following powers, and no others: First, those granted in *express words;* second, those *necessarily or fairly implied in,* or *incident* to, the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.

Dillon, *Municipal Corporations* (1st ed.1872) (emphasis in original).

Indiana embraced Judge Dillon's views on this narrow approach to implied powers, with its presumption against existence of powers not explicitly granted by statute, virtually from the publication of his treatise until well into modern times. *See Higert v. City of Greencastle,* 43 Ind. 574, 1873 WL 5512 (1873); *Pittsburgh, C., C. & St. L. Ry. Co. v. Town of Crown Point,* 146 Ind. 421, 45 N.E. 587 (1896); *City of South Bend v. Krovitch,* 149 Ind.App. 438, 273 N.E.2d 288 (1971).[3]

Indeed, this Court sometimes cited Judge Dillon's treatise in voiding various arrangements local officials used to audit or collect taxes. *See, e.g. City of Ft. Wayne v. Lehr,* 88 Ind. 62, 65, 1882 WL 6845 (1882) (city cannot employ deputy to collect taxes); *Miller v. Embree,* 88 Ind. 133, 1882 WL 6581 (1882) (county cannot pay attorney to assist treasurer in collections). The legislature thereafter wrote new statutes to sanction such arrangements.[4]

---

3. In *Krovitch,* Judge Robertson said that local autonomy was in "a state of practical non-existence." 149 Ind.App. at 444, 273 N.E.2d at 291.

4. Though our Court has voided some specific arrangements for tax collection, we also acknowledged that it became lawful in 1891 for a tax officer to employ anyone to discover omitted tax property. *See City of Richmond v. Dickinson,* 155 Ind. 345, 58 N.E. 260, 262 (Ind.1900) (Section 147 of the general tax law of 1881 was quite specific about who could perform the audits. "No person other than the official provided for in this law shall be employed by the county commissioners to discover omitted property." However, the amendment of 1891, which repealed the 1881 law, did not include this sentence. Thus, it became lawful for the official (i.e., the auditor) to engage assistants for gathering information about the omitted property.)

The legal regimes of municipal law today are completely different. In 1971, our General Assembly reversed the Dillon Rule when it adopted the Powers of Cities Act. Acts 1971, P.L. 250. In 1980, it put a stake through the heart of the Dillon Rule by adopting the Home Rule Act, Ind. Code §§ 36–1–3–1 to –9 (Burns 1981), which remains in effect today.

Under the Home Rule Act, "[t]he policy of the state is to grant [counties, municipalities and townships] all the powers that they need for the effective operation of government as to local affairs." Ind.Code Ann. § 36–1–3–2 (West 1997); *see also* Ind.Code Ann. § 36–1–2–23 (West 1997). Such entities possess, in addition to powers granted by statute, "all other powers necessary *or desirable* in the conduct of [their] affairs, even though not granted by statute." Ind.Code Ann. § 36–1–3–4(b)(2) (West 1997) (emphasis added).

The traditional presumption regarding implied power has been reversed, so that now "[a]ny doubt as to the existence of a power of a [county, township, or municipality] shall be resolved in favor of its existence." Ind.Code Ann. § 36–1–3–3(b) (West 1997). The most significant limitation is that these entities must comply with any statutory provisions requiring that a power be exercised in a specific manner.

*See* Ind.Code Ann. § 36–1–3–6(a) (West 1997).[5]

Taxpayers therefore take too "Dillonish" an approach when they argue that Ind. Code Ann. § 6–1.1–3–14 (West 2000)[6] gives township assessors exclusive power to audit personal property tax returns. (Appellees' Br. at 9.) A statute imposing responsibility on township assessors to review personal property tax returns does not diminish the presumed power of other local officials who share responsibility for personal property taxation to conduct audits.

Moreover, Taxpayers' argument ignores Ind.Code Ann. § 6–1.1–36–12 (West 2000), which explicitly recognizes a county's auditing authority, as well as the power to delegate that authority:

> If a board of county commissioners enters into a contract for the discovery of property which has been omitted from assessment, the investigation and collection expenses shall be deducted from the gross amount of taxes collected on the omitted property which is so discovered. The remainder of the taxes collected on the omitted property shall be distributed to the appropriate taxing units.

Taxpayers interpret this section to mean that TMA may only audit for omitted, not

---

**5.** In its 2002 session, the General Assembly enacted explicit legislation to allow counties to hire outside firms to audit personal property records without violating confidentiality statutes, but prohibiting fees based on a percentage of collections. *See* P.L. 178–2002 §§ 37–39. We recently said:

> [A]n amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed. Such an amendment raises the presumption that the legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intent more clearly.

*United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind.1999) (citations omitted). It is

unclear whether the legislature viewed the amendment as clarifying earlier provisions or changing substantive law. In any event, the contracts and tax years in this case all predate the new law. We then interpret the relevant statutes as they existed at the time this case arose.

**6.** "The township assessor shall examine and verify the accuracy of each personal property return filed with him by a taxpayer. If appropriate, the assessor shall compare a return with the books of the taxpayer and with personal property owned, held, possessed, controlled, or occupied by the taxpayer."

undervalued, property. (Appellees' Br. at 12.) Again, this is too Dillonish a reading. The express statutory power to contract out audits for omitted personal property does not preclude the implied power to do the same for undervalued property.

Moreover, public policy favors the power to audit for undervalued property. Prior to the trial court's ruling in favor of the Taxpayers, TMA had discovered $61 million in omissions and/or under-valuations by seventy-four taxpayers. (Pet. Trans. Exh. A.) This translated into over $3.6 million in additional tax assessments for the forty-two taxpayers billed before the trial court's ruling halted the process. (*Id.*)

## II. Does It Breach Confidentiality?

■ Taxpayers' second claim relies on Indiana Code Ann. § 6–1.1–35–9 (West 2000), which says in relevant part:

(a) All information which is related to earnings, income, profits, losses, or expenditures and which is either given by a person to an assessing official, a member of a county property tax assessment board of appeals, a county assessor, or one (1) of their employees or acquired by an assessing official, a member of a county property tax assessment board of appeals, a county assessor, or one (1) of their employees in the performance of his duties is confidential. The assessed valuation of tangible property is a matter of public record and is thus not confidential. Confidential information may be disclosed only in a manner which is authorized under subsection (b), (c), or (d).

(b) Confidential information may be disclosed to an official or employee of:

(1) this state or another state;

(2) the United States; or

(3) an agency or subdivision of this state, another state, or the United States;

if the information is required in the performance of his official duties.

Taxpayers argue that this statute precludes disclosure to TMA of their personal property tax returns and the charts of accounts, trial balances, and other records needed to audit those returns. (Appellees' Br. at 20–36.) Again, we find this too narrow a reading, as it would effectively foreclose local officials from exercising their implicit auditing power in a manner specifically contemplated by the legislature in Ind.Code § 6–1.1–36–12.

Furthermore, Article 1.1 ("Property Taxes") refers to "employing" such third parties as technical advisors and professional appraisal firms. *See* Ind.Code Ann. § 6–1.1–4–16 (West 2000) (county and township assessors may "employ" technical advisors to determine real property values); § 6–1.1–33–4 (division of tax review may "employ" professional appraisal firms to assist in making test checks of property valuations). We therefore conclude that in the overall context of Article 1.1, and viewed against the backdrop of our home rule scheme, disclosure of such information to a firm retained by a county to audit property tax returns does not violate the confidentiality statute.

Taxpayers also assert that they should not be required to disclose confidential information to firms such as TMA because those firms are not subject to the same sanctions for improper disclosure as governmental employees. (Appellees' Br. at 29–31.) Under Indiana Code Ann. § 5–14–3–10 (West 2000), however, TMA employees could commit class A misdemeanors by violating the confidentiality of records reviewed during the course of Indiana personal property tax audits.

## III. The Commission Arrangement

■ Taxpayers invoke public policy and state and federal constitutional due process provisions in arguing that TMA is not sufficiently impartial to perform an essentially judicial function because of its percentage fee arrangement.[7] (*See* Appellees' Br. at 36–49.)

The Appellate Court elegantly addressed this public policy argument a century ago:

> It is not only the policy, but the spirit, of the law that all property, both real and personal, which is subject to taxation, shall bear its proportionate share of the public burden, and public policy demands that every taxpayer contribute his just proportion to the expenses of government.... [I]f the law authorizes any method of discovering such property so it may be taxed, the efforts of public officers in securing that result should be encouraged and upheld. Though a percentage of the amount thus collected and covered into the public treasury is paid for ferreting out and discovering the property, still the public is benefited, and the burden of taxation is equalized to the amount remaining in the treasury after such payment; otherwise such property would wholly escape taxation, and nothing would be taken from the burden of the honest property owner who returns all of his property to be taxed.

*Fleener v. Litsey*, 30 Ind.App. at 404–05, 66 N.E. at 84.

As to the constitutional arguments, we conclude that TMA's role was not sufficiently judicial in nature to render the commission arrangement impermissible.

Tippecanoe County officials selected which returns to audit, i.e., all those showing over $50,000 of personal property. The county assessor retained and exercised the responsibility and authority to make all significant judgment calls concerning potential adjustments noted by TMA, such as whether a piece of equipment reported by a taxpayer as a "special tool" qualified under guidelines provided by the State Board of Tax Commissioners.

All notices to taxpayers came from the county assessor. At the time of this case, taxpayers could appeal assessment revisions to their local property tax assessment board of appeals, then to the State Board of Tax Commissioners, and then to the Indiana Tax Court. Ind.Code Ann. § 6–1.1–15–1 (West 2000) (appeal to county board); § 6–1.1–15–3 (review by state board of tax commissioners); § 6–1.1–15–5 (appeal to tax court).

The central decisions affecting Taxpayers are sufficiently within the hands of local officials that the commission arrangement does not violate due process.

### Conclusion

We reverse the trial court and direct summary judgment in favor of the County.

DICKSON, SULLIVAN, BOEHM and RUCKER, JJ., concur.

---

**7.** This arrangement complies with Ind.Code § 6–1.1–36–12, which requires that "tax ferret" fees for discovering omitted property come out of collections generated. Contingent fees are therefore not only within the contemplation of the statute, they are the only means of compensation allowed for at least some of the additional assessments arising out of TMA's auditing efforts.