**In the Matter of the COMMITMENT OF J.W.B.**

No. 20A03–0909–CV–418.

Court of Appeals of Indiana.

Feb. 17, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, David L. Steiner, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellant Indiana Family and Social Services Administration/Division of Mental Health and Addiction.

Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, LLP, Goshen, IN, Attorney for Amicus Curiae County of Elkhart, Indiana.

## OPINION

BAILEY, Judge.

### Case Summary

The Indiana Family and Social Services Administration ("State") challenges a single sentence of the trial court's order for the continued civil commitment of J.W.B. The State argues that it, rather than the trial court, has authority to control whether a civilly committed person is transferred within a facility. Concluding that the General Assembly has placed this authority with the Executive Branch, rather than the Judicial Branch, we reverse and remand.[1]

We granted Elkhart County's motion to appear as amicus curiae. J.W.B., while the subject of the matter, does not actively participate in the appeal.

### Facts and Procedural History

J.W.B. was charged with possession of cocaine and marijuana, as well as resisting law enforcement, but was determined to be incompetent to stand trial. In December 2007, Robert Shaw, M.D., petitioned the trial court for the involuntary commitment of J.W.B., stating that J.W.B. was dangerous in that he presented a substantial risk that he would harm himself. Specifically, Dr. Shaw reported that J.W.B. had attempted suicide by jumping off a building. Dr. Shaw recommended as a suitable facility for J.W.B.'s care the Isaac Ray Treatment Center at the Logansport State Hospital. The petition was granted. At the State's request, the trial court later au-

---

1. As our holding is based upon state statute, we do not reach the State's other arguments, including Separation of Powers and the federal Health Insurance Portability and Accountability Act of 1996.

thorized placement of J.W.B. "in a locked and secure unit at the Logansport State Hospital other than the Isaac Ray Unit, as originally specified." Appendix at 14.

In December 2008, John Thompson, M.D., submitted to the trial court a periodic report, in which Dr. Thompson stated that J.W.B. was not a danger to himself or others and recommended the following:

> The patient has progressed in treatment to the point of being transferred to a lesser restrictive environment at Logansport State Hospital, i.e., Larson I North. He continues to have problems with psychosis and impaired perception of reality.

App. at 17. J.W.B. agreed to an extension of his commitment without a hearing.

On January 13, 2009, the trial court ordered J.W.B.'s commitment to be continued, but prohibited his transfer to a nonsecure unit without advance notice to the trial court:

> It is further ordered that [J.W.B.] shall not be transferred or released from the locked and secure unit at the Logansport State Hospital to a different unit or facility, or otherwise discharged or released, without ten (10) days written notice to the court.

App. at 20. From this order, the State filed a motion to correct error, in which it challenged the above provision. The State acknowledged that statute required the trial court to receive advance notice of the patient's discharge, but argued that the trial court lacked statutory authority to require advance notice of a patient's transfer among units within a facility. In addition, the State asserted that it, not the trial court, had statutory authority to determine whether a patient was discharged or transferred within a facility. The trial court denied the State's motion to correct error.

The State now appeals the denial of its motion to correct error.

**Discussion and Decision**

 As the facts are not in dispute, this appeal presents a question of law, which we review de novo. *Tippecanoe County v. Ind. Mfrs. Ass'n,* 784 N.E.2d 463, 465 (Ind.2003). Where a statute is unambiguous, we read each word and phrase in its plain, ordinary, and usual sense. *Porter Dev., LLC v. First Nat'l Bank of Valparaiso,* 866 N.E.2d 775, 778 (Ind. 2007).

 Indiana Code Article 12–26 governs, among other things, the treatment of civilly-committed individuals, including the transfer of individuals (Chapter 11), notice of an individual's discharge (Chapter 12), and the review of a commitment (Chapter 15). With respect to transfers, the superintendent of a facility may transfer the commitment of the individual if the transfer is in the best interest of the individual or other patients. Ind.Code § 12–26–11–1.[2] When doing so, the superintendent may select from among eight categories of facilities, including state institutions, hospital psychiatric units, and federal facilities. *Id.* The individual may contest the transfer. Ind.Code §§ 12–26–11–5 and –6. However, Chapter 12–26–11 provides no mechanism for the trial court or the county to contest the State's transfer. Rather, the trial court is the forum in which the individual may challenge his transfer. Ind.Code § 12–26–11–6.

Regarding an individual's discharge, a trial court ordering an individual's commitment may require the superintendent to give notice "that the committed individual will be discharged" at least twenty days

---

**2.** Although the State's Appellant Brief addressed Indiana Code Section 12–26–11–1, Elkhart County did not address or cite this statute.

before the end of the commitment period. Ind.Code § 12–26–12–1. As with Chapter 11, however, Chapter 12 does not provide for the trial court or the county to challenge the individual's discharge. Instead, the trial court would be the forum for a dispute concerning whether the individual should be discharged. Ind.Code §§ 12–26–12–2, and –5 to –8.

Finally, the superintendent must file with the court, at least annually or more often if so directed, a review addressing, among other things, whether the individual needs to remain in the facility. Ind.Code § 12–26–15–1(a). Upon receipt of the report, the trial court must do one of the following:

 (1) Order the individual's continued custody, care, and treatment in the appropriate facility or therapy program.

 (2) Terminate the commitment or release the individual from the therapy program.

 (3) Conduct a hearing under IC 12–26–12 [regarding discharge].

Ind.Code § 12–26–15–2(a). The individual may request a hearing to appeal the trial court's decision whether to continue or terminate the civil commitment. Ind.Code §§ 12–26–15–3 and –4. The superintendent and/or the attending physician may discharge the individual before the end of the commitment period, unless the trial court has entered an order under Chapter 12.

It is clear from the plain language of Chapters 11, 12, and 15 that the superintendent of a facility controls whether to transfer an individual, where to transfer the individual, and whether to discharge an individual. The trial court can require the superintendent to provide certain notices, consider disputes regarding the superintendent's decision, and, upon submission of a superintendent's review, decide whether to continue or terminate the commitment.

Thus, the authority to decide where an individual should receive treatment and the responsibility for that decision rest with the superintendent of the facility. The trial court therefore exceeded its statutory authority in issuing the appealed order.

Reversed and remanded.

BAKER, C.J., and ROBB, J., concur.