**BP PRODUCTS NORTH AMERICA, INC., Appellant–Plaintiff,**

v.

**The BOARD OF COMMISSIONERS OF LAKE COUNTY; The Lake County Assessment Board of Appeals, Paul G. Karras, Secretary and Paul G. Karras, in his Official capacity as the Lake County Assessor, Appellees–Defendants.**

No. 45A05–0312–CV–636.

Court of Appeals of Indiana.

July 20, 2004.

been inaccurate.

Jeffrey T. Bennett, Steven G. Cracraft, Karl L. Mulvaney, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Appellant.

Brian P. Popp, Laszlo & Popp, LLP, Dock McDowell, The McDowell Law Firm, Merrillville, IN, John ·S. Dull, Crown Point, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff BP Products North America, Inc. (BP) appeals the trial court's entry of summary judgment in favor of appellee-defendant the Board of Commissioners of Lake County *et al.*, (Lake County) regarding the issuance of a writ of production compelling BP to produce a number of the corporation's books and records that Lake County had requested for the purpose of conducting an audit. Similarly, BP contends that the trial court erred in concluding that Lake County had

the power and jurisdiction to conduct audits of BP's business property in light of the applicable statutes of limitation. Concluding that the trial court acted within its discretion in issuing the writ of production to BP, and further finding that BP's request for declaratory relief was properly denied, we affirm the entry of summary judgment for Lake County. As a result, we also remand this cause to the trial court with instructions that it dissolve the stay that had been issued pending the resolution of this appeal with regard to the writ of production.

## FACTS

BP, a Maryland corporation, is one of the largest oil and gasoline producers/retailers in the United States. It operates its facilities and owns real and personal property in Lake County. Sometime in the spring of 2001, Lake County contracted with a tax management firm in Raleigh, North Carolina, for the audit of several large taxpayers in the county, including BP. Lake County Assessor Paul Karras sent BP a letter notifying the company that the tax firm planned to audit BP's personal property returns for the years 1998 through 2002. BP resisted the audit and filed two petitions requesting a declaratory determination with the State Board of Tax Commissioners—which is currently referred to as the Division of Local Government Finance (DLGF)—as to whether such audits could be conducted. In essence, BP questioned whether such audits would comply with the applicable statutes and rules.

BP and Lake County then entered into discussions pertaining to the proposed audits. Pending BP's request for a declaratory determination and its challenges to the audits, the parties generated a series of documents with the hope that the time allowed for changing the assessment of unreported or undervalued business personal property belonging to BP would be extended.

The DLGF ultimately dismissed BP's request for declaratory determination on March 17, 2003. As a result, Lake County sent BP another letter requesting that the audit be scheduled. Lake County asserted that BP's general ledgers, inventory reports, asset schedules, balance sheets, and related documents that it requested were necessary for its investigation into the accuracy of BP's self-reported tax returns for the tax years at issue. BP continued to resist Lake County's purported right to conduct any investigation at all into the accuracy of BP's property tax returns prior to the 2003 tax year. The Lake County auditor alleged in an affidavit that until an audit of BP's relevant books and records is undertaken, he "and other members of my office do not know whether there is any . . . omitted [business personal property which BP may have failed to report] or at what amount it should be valued." Appellant's App. p. 202.

On May 27, 2003, BP filed a complaint in the trial court challenging Lake County's authority to undertake the requested audits. In particular, BP sought to obtain a definitive judicial determination that Indiana Code section 6–1.1–16–1, the statute pertaining to a local government's authority and power to change assessments for a taxpayer, bars Lake County from auditing and/or reassessing BP's business personal property with respect to any assessment year prior to 2003. BP also asserted that the exercise of Lake County's audit and subpoena powers violates Indiana Code section 6–1.1–16–1, and that Lake County lacked the power or jurisdiction to conduct the audits given the procedural history of the property tax disputes between Lake County and BP. Thus, BP argued that Indiana Code section 6–1.1–

16–1 established explicit timelines for reassessments that are extended to audits. Inasmuch as Lake County has not complied with the timelines for the years in question, says BP, reassessment and audit powers can no longer be exercised. BP also contended that Indiana Code section 6–1.1–9–3, the statute regarding assessment when filing fraudulent returns, not filing a return in a particular year, or omitting items of property from a return, does not apply here because the limited circumstances set forth in that statute do not exist in this case.

Lake County then filed a motion for a writ of production in accordance with Indiana Code section 6–1.1–36–4, that allows for various county officials to file an affidavit with the Circuit Court compelling a taxpayer to supply the requested books or records. Lake County also filed a separate motion for summary judgment, asserting that it was entitled to judgment as a matter of law because there is no time limit in accordance with Indiana law on the ability of a local government to discover undervaluations or omissions in personal property reports. Alternatively, Lake County argued that confidential documents that were signed in 2001, 2002, and 2003 with BP extended the time permitted for changing the assessment of business personal property. Thus, because BP did not comply with the request to produce its books and records, Lake County maintained that the writ to produce those records is compelled as a matter of law.

The trial court consolidated the motions and set them for hearing. BP then filed its own cross-motion for summary judgment, claiming that Lake County's proposed audits and assessments were time-barred under Indiana Code section 6–1.1–16–1 and that the exceptions set forth therein do not apply here. Thus, BP argued that there was no genuine issue of material fact because Lake County is precluded from compelling production of books or other records for the reason that it is prohibited from changing the assessed value of BP's property.

Following a hearing on these combined motions, the trial court granted Lake County's motions for writ of production and summary judgment. The trial court ordered BP to produce the books and records requested in Lake County's motion for writ of production and retained "jurisdiction of [the] action to ensure compliance with [that writ]." Appellant's App. p. 13. It was also determined that the requested books and records were "part of an audit to determine whether BP's self-reported business personal property tax returns for those years were in substantial compliance with Indiana Law." Appellant's App. p. 9. The trial court then noted that the statute of limitations set forth in Indiana Code section 6–1.1–16–1 does not apply to a local government's ability to audit a taxpayer's records and to reassess BP's property. However, the trial court also observed that Indiana Code section 6–1.1–36–12(a) does apply to a local government's ability to audit a taxpayer's records, and, under the provisions of that statute, the legislature chose not to place a time limit on the government's ability to perform the audit. As a result, the trial court ordered BP to produce the "information, books and records, . . . as they relate to BP's business personal property located in [the] county." BP appeals, and this court issued a stay during the pendency of this appeal regarding the requirement of BP to turn over its books and records in accordance with the writ.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a ruling on summary judgment, this court stands in the shoes of

the trial court. *Rogier v. Am. Testing and Eng'g Corp.,* 734 N.E.2d 606, 613 (Ind.Ct. App.2000), *trans. denied.* Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001). A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Rogier,* 734 N.E.2d at 613.

### II. BP's Claims

#### A. Issuance of the Writ of Production and Lake County's Ability to Audit

■ In considering the claims that BP presents today with regard to Lake County's power or ability to audit BP's records, as well as the propriety of the writ of production, we initially observe that public policy favors the power to audit for undervalued property. *Tippecanoe County v. Indiana Manufacturer's Assoc.,* 784 N.E.2d 463, 467 (Ind.2003). "Tax audits provide a necessary check upon a 'self-assessment' system, and it is heavily reliant on full disclosure and accurate reporting." *Paul Heuring Motors, Inc. v. State Bd. of Tax Comm'rs,* 620 N.E.2d 39, 41 (Ind.Tax 1993). Absent tax audits, "property would wholly escape taxation, and nothing would be taken from the burden of the honest property owner who returns all of his property to be taxed." *Fleener v. Litsey,* 30 Ind.App. 399, 404–05, 66 N.E. 82, 84 (1903).

■ Additionally, we note that counties may enter into contracts for the discovery of undervalued property or property that has been omitted from tax listings. *See id.* To encourage audits of undervalued or omitted property, our legislature recently amended the statutes to make clear that local governments can hire contractors to perform the discovery audits. Ind.Code § 6–1.1–36–12(a). As our supreme court recognized in *Tippecanoe,* unless a statute specifically restricts the power to audit for omitted or undervalued property, that power is not limited. *Tippecanoe,* 784 N.E.2d at 467. Moreover, the *Tippecanoe* court not only recognized that "public policy favors the power to audit," but it also observed that such a power may only be limited by "statutory provisions requiring that a power be exercised in a specific manner." *Id.* at 466. *Tippecanoe* went on to note that under the Home Rule Act,

'[t]he policy of the state is to grant [counties, municipalities and townships] all the power that they need for the effective operation of government as to local affairs.' Ind.Code Ann. § 36–1–3–2 ... *see also* Ind.Code Ann. § 36–1–2–23.... Such entities possess, in addition to the powers granted by statute, 'all other powers necessary *or desirable* in the conduct of [their] affairs, even though not granted by statute.' Ind. Code Ann. § 36–1–3–4(b)(2) (emphasis added).

*Id.*

We further observe that when interpreting a statute, the object is to determine the intent of the legislature. *Chambliss v. State,* 746 N.E.2d 73, 77 (Ind.2001). The primary evidence of legislative intent is the language of the statute. *Id.*

■ Turning to the merits here, we note that Indiana Code section 6–1.1–16–1(a) provides that "an assessing official, county

assessor, or county property tax assessment board of appeals may not change the assessed value claimed by a taxpayer on a personal property return unless ... [they] take ... action and [give] the notice required by Ind.Code § 6–1.1–3–20 within [a set time period]." In accordance with Indiana Code section 6–1.1–16–1(a)(2)(B), the county assessor or county property tax assessment board of appeals must make a change in the assessed value, including the final determination by the board of an assessment changed by a township or county assessing official, and give the notice of the change on or before the later of: (a) October 30 of the year for which the assessment is made; or (b) five (5) months from the date the personal property return is filed if the return is filed after May 15 of the year for which the assessment is made.

The statute goes on to provide that a local government may contract with a third party auditor to "(1) examine and verify the accuracy of personal property returns filed by taxpayers with a township assessor of a township in the county; and (2) compare a return with the books of the taxpayer and with personal property owned, held, possessed, controlled, or occupied by the taxpayer." I.C. § 6–1.1–36–12(a). Conspicuously absent from this scheme is any time limit on the power to *audit*. Moreover, we note that when the legislature provided for the circuit courts of this state to issue orders enforcing a tax official's request for production of books and records in accordance with Indiana Code section 6–1.1–36–4, it did not limit those orders to requests made within a certain time period. Thus, in construing these statutes, it is apparent that BP has failed to show that the proposed audit by Lake County is time-barred.

That said, BP is essentially inviting this court to judicially establish a time limit on audits. However, as our supreme court

made clear in *Tippecanoe*, that power may only be limited by statute. 784 N.E.2d at 466. To be sure, the only statutory provision specifying the manner in which an audit may be conducted is Indiana Code section 6–1.1–36–12(a), which authorizes local governments to retain third party auditors. Contrary to BP's assertion, that statute does not limit the time in which the audit may be conducted. Therefore, BP has failed to establish a basis to judicially engraft the time limits set forth in Indiana Code section 6–1.1–16–1 onto the audit power of Lake County.

We also note that BP erroneously contends that an assessment can only be changed (a) before October 30 of the assessment year or (b) within five months of the date the personal property return is filed pursuant to subsection (a)(2) of Indiana Code section 6–1.1–16–1, whichever occurs first. We point to subsection (d) of the statute that provides that this particular time bar is inapplicable if the taxpayer has failed to file a return in substantial compliance with Indiana law:

> This section does not apply if the taxpayer:
>
> > (1) fails to file a personal property return which substantially complies with the provision of this article and the regulations of the State Board of Tax Commissioners; ...

In reviewing the relevant statutes, it is apparent to us that the purpose of the audit is to determine whether BP has filed its returns for prior years in substantial compliance with the Indiana Code. In the event that such compliance is found to be lacking because BP may have omitted or undervalued certain property, then the assessment may be changed for up to three years after the date the return is filed. Specifically, we note the provisions of Indiana Code section 6–1.1–9–3(a):

If a taxpayer files a personal property return for a particular year, personal property which is omitted from or undervalued on the return may be assessed, or its assessed value may be increased, only if the notice required under section one of this chapter is given within three (3) years after the date the return is filed. However, if the taxpayer's personal property return for a particular year substantially complies with the provisions of this article and the regulations of the State Board of Tax Commissioners, an assessing official or county property tax assessment board of appeals may change the assessed value claimed by the taxpayer on the return only within the time period prescribed in I.C. § 6–1.1–16–1.

In examining the above provisions, it is apparent that BP's assessment may be changed for up to *three years* if the audit shows that the return is not in substantial compliance with the Indiana Code and regulations because "personal property . . . is omitted from or undervalued on the return. . . ." Therefore, the confidential documents signed in 2001, 2002, and 2003 that were filed under seal, effectively tolled the three-year statute of limitations before it expired for the assessment years 1998, 1999 and 2000. Therefore, the writ of production ordered by the trial court permits Lake County to audit BP's books and records to determine whether BP has substantially complied with the law by reporting and appropriately valuing its business properties. In the event that BP's own records demonstrated that it failed to report or had undervalued some of its business personal property for the years at issue, the audit could certainly result in a change in BP's assessment. We cannot agree with BP's contention that Lake County is merely attempting to get a "second bite at the audit apple." Appellant's Reply Br. p. 12.

BP further argues that before a writ of production may be issued, "Lake County carries the burden of demonstrating that" its audit will show BP's failure to substantially comply with the law. Our supreme court rejected the argument that a taxing authority must show specifically what the documents it seeks will reveal in *State Bd. of Tax Comm'rs v. Daviess Circuit Court*, 249 Ind. 580, 230 N.E.2d 761, 765 (1967). To be sure, the agency is only required to make a "showing of the general relevancy of the [requested] materials to an authorized" inquiry as opposed to a specific demonstration of what those documents will show. *Id.* The *Daviess* court further observed that "to require a more extensive showing . . . would unduly hamper the [taxing] agency in carrying out its mission. The agency, having both the power and the duty to investigate, has not seen the documents it is demanding and often does not know what those documents might reveal." *Id.* As a result of this language, we hold that the trial court acted within its discretion by ordering BP to produce the records requested even though Lake County could not know whether those records would show a failure to comply with the law.

### B. Usurping the Jurisdictions of Higher Agencies and Courts

In a related issue, BP argues that all of the assessments requested by Lake County have previously been addressed by local assessing officials in some fashion and are now pending before higher agencies and courts. Therefore, says BP, Lake County's attempt to reopen these assessments, through untimely audits, usurps the jurisdiction of these higher agencies and courts and it was entitled to a declaratory judgment. Appellant's Br. p. 37.

In addressing this contention, it is apparent that if an audit demonstrated that,

unbeknownst to Lake County, BP had failed to report personal property for taxation in violation of Indiana law, BP would not be shielded from an increased assessment even though the company may have previously initiated unrelated legal actions regarding its assessments for the years covered by the audit. Were it otherwise, the discovered property that BP had failed to report would escape taxation, and such a result cannot be tolerated. The other proceedings cited by BP did not concern the requested audits and, in light of the fact that those proceedings could not foreclose taxation . of property discovered through the audit that BP had failed to report, we cannot say that the trial court abused its discretion.

■ Finally, we reject BP's claim that its due process rights were violated when the trial court issued the writ of production. To be sure, such a contention that Lake County has failed to provide BP with a timely notice of reassessment is premature because Lake County will not know if any reassessment is in order until after the requested records are reviewed. Thus, BP's claim with respect to this issue is premature, inasmuch as the determination of whether the taxpayer was provided with notice and a meaningful opportunity to be heard before a tax liability is fixed cannot be answered until the additional amount that may be owed is calculated. Thus, in the event that BP's tax liability ultimately changes because BP violated Indiana law by failing to report property or by undervaluing certain property that it had valued, BP should be given notice and an opportunity to be heard. Therefore, the trial court properly denied BP's request for declaratory relief, and it was not an abuse of discretion for it to have issued the writ of production.

*CONCLUSION*

In light of our discussion above, we conclude that the trial court did not abuse its discretion in issuing the writ of production, and it was appropriate to deny BP's request for declaratory relief that sought to block Lake County from inspecting the records that were subject to the writ. Thus, we affirm the judgment of the trial court and remand this cause with instructions for the trial court to dissolve the stay that this court had granting pending the resolution of this appeal.

Affirmed and remanded.

FRIEDLANDER and BARNES, JJ., concur.