LAKE COUNTY ASSESSOR,
Petitioner,

v.

AMOCO SULFUR RECOVERY CORP., n/k/a BP Products North America, Inc., BP Products North America, Inc., Respondents,

and

Department of Local Government Finance, Intervenor.

No. 49T10–0909–TA–58.

Tax Court of Indiana.

July 14, 2010.

John J. Butler, Parker Poe Adams & Bernstein LLP, Raleigh, NC, John S. Dull,

Attorney at Law, Merrillville, IN, Brian P. Popp, Laszlo & Popp PC, Merrillville, IN, Attorneys for Petitioner.

Jeffrey T. Bennett, Bradley D. Hasler, Margaret M. Christensen, Bingham McHale LLP, Indianapolis, IN, Attorneys for Respondents.

Gregory F. Zoeller, Attorney General of Indiana, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Intervenor.

FISHER, J.

The Lake County Assessor (Assessor) appeals the Indiana Board of Tax Review's (Indiana Board) final determinations concluding that its 2004, 2005, and 2006 personal property assessments of Amoco Sulfur Recovery Corp., n/k/a BP Products North America, Inc. and BP Products North America, Inc. (collectively, "BP") were untimely under Indiana Code § 6–1.1–16–1. Because the pleadings, orders, and other materials in this case have been filed under seal, *see generally* Indiana Administrative Rule 9, this Court's opinion will provide only that information necessary for the reader to understand its disposition of the issues.

## FACTS AND PROCEDURAL HISTORY

BP owns and operates the "largest inland refinery in the world." (Cert. Admin. R. at 975.) This 1,400 acre refinery stretches across the Indiana cities of Whiting, Hammond, and East Chicago. (*See* Cert. Admin. R. at 975.)

BP timely filed its Business Tangible Personal Property Returns (Returns) on June 14, 2004 for the 2004 tax year; on June 8, 2005 for the 2005 tax year; and on June 13, 2006 for the 2006 tax year (the years at issue).[1] In completing its Returns, BP used the Department of Local Government Finance's (DLGF) personal property tax return forms and followed the instructions provided therein. Specifically, BP reported the actual cost of all of its depreciable business tangible personal property, it deducted the cost of certain property claimed to be exempt air pollution control system (hereinafter, "APCS") property, and it excluded the assessed value of the APCS property from its overall personal property assessed value computation.

At some point in 2004, the Assessor engaged an accounting firm to review the accuracy of BP's "documentation." (*See* Cert. Admin. R. at 1150–51, 1174–75.) The accounting firm, however, could not review the propriety of BP's APCS exemption claim because it lacked the expertise. (*See* Cert. Admin. R. at 1150.) Consequently, in January 2007, the Assessor contracted with Gerard Muller, a refinery engineer, to review BP's exemption claim. (Cert. Admin. R. at 928–30, 1150–51.) Muller visited the refinery in May 2007. Based on Muller's recommendation, the Assessor determined that BP's exemption claim was improper. On or about May 31, 2007, the Assessor issued several notices to BP whereby he increased the assessed value of its personal property as a result of the disallowance of BP's claimed APCS exemption. (*See* Cert. Admin. R. at 9–32.)

On July 5, 2007, BP challenged the validity of the Assessor's increased assessments. BP argued that because Indiana Code § 6–1.1–16–1 expressly provided that such assessments were to be made within five months of the date that BP filed its Returns, the Assessor's increased assessments were untimely and therefore invalid.

---

1. Although BP's Returns were statutorily due in May of each of the years at issue, it sought and received extensions of time to file. (*See, e.g.,* Cert. Admin. R. at 589–90, 1121.)

(*See* Cert. Admin. R. at 6–8.) On November 28, 2007, the Lake County Property Tax Assessment Board of Appeals (PTABOA) conducted a hearing on the matter. The PTABOA subsequently determined that the increased assessments were timely under Indiana Code § 6–1.1–9–3. (*See* Cert. Admin. R. at 35–41.)

On January 10, 2008, BP filed six "Petitions for Review" (Form 131s) with the Indiana Board.[2] In its Form 131s, BP again asserted that the assessments were untimely and requested that its prior assessments be reinstated. On or about January 21, 2009, BP filed a motion for summary judgment. On July 20, 2009, the Indiana Board held a hearing on the motion. On August 19, 2009, the Indiana Board granted summary judgment in favor of BP. In its final determinations, the Indiana Board explained that because BP's Returns substantially complied with the APCS statutes and regulations, the assessments were untimely under Indiana Code § 6–1.1–16–1. (*See* Cert. Admin. R. at 339–40.)

On September 18, 2009, the Assessor initiated this original tax appeal.[3] On October 21, 2009, the DLGF moved to intervene; the Court subsequently granted the DLGF's motion. The Court heard the parties' oral arguments on April 14, 2010. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ When this Court reviews a final determination of the Indiana Board it is limited to determining whether it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2010). Accordingly, the Court reviews the Indiana Board's grant of summary judgment *de novo*. *See Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind.2009) (citing *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1018 (Ind.2009)).

■ The Indiana Board's judgment arrives on appeal " 'clothed with a presumption of validity,' " and the Assessor therefore " 'bears the burden of proving that the [Indiana Board] erred in determining that there [were] no genuine issues of material fact[4] and that [BP was] entitled to judgment as a matter of law.' " *See id.* at 762 (quoting *Rosi v. Bus. Furniture Corp.*,

---

**2.** For administrative purposes, the Assessor assigned two distinct parcel identification numbers to the personal property reported by BP (i.e., Parcel No. 28–340093 and Parcel No. 28–800256). (*See* Cert. Admin. R. at 539–40 ¶ 2.)

**3.** While the Assessor filed six "Verified Petitions for Review," the Court consolidated the petitions for proceedings under Cause No. 49T10–0909–TA–58.

**4.** A genuine issue of material fact exists when facts concerning an issue which would dispose of the case are in dispute, when the fact finder must resolve the parties' differing accounts of the truth, or when the undisputed material facts support conflicting inferences as to an issue. *See Gaboury v. Ireland Road Grace Brethren, Inc.*, 446 N.E.2d 1310, 1313 (Ind.1983); *Scott Oil Co. v. Indiana Dep't of State Revenue*, 584 N.E.2d 1127, 1129 (Ind. Tax Ct.1992).

615 N.E.2d 431, 434 (Ind.1993) (footnote added)). The Court will draw all reasonable inferences in favor of the Assessor and will conclude that summary judgment is appropriate only " 'if the designated evidentiary matter shows that there [was] no genuine issue as to any material fact and that [BP was] entitled to judgment as a matter of law.' " *See id.* at 761 (quoting Ind. Trial Rule 56(C)).

## Discussion

■ On appeal, the Assessor claims that the Indiana Board's grant of summary judgment in BP's favor was in error. While the Assessor advances several arguments to support his claim, he presents but only one issue for review: whether BP's Returns substantially complied with the APCS statutes and regulations.

During the tax years at issue, Indiana Code § 6–1.1–16–1, in relevant part, provided:

> [A]n ... assessor ... may not change the assessed value claimed by a taxpayer on a personal property return unless the ... assessor ... takes the action and gives the notice required by IC 6–1.1–3–20 within ... five (5) months from the date the personal property return is filed if the return is filed after May 15 of the year for which the assessment is made.

IND.CODE ANN. § 6–1.1–16–1(a)(2)(B) (West 2004) (amended 2008). The five month restriction does not apply, however, if a taxpayer (among other things) "fail[ed] to file a personal property return which *substantially complie[d]* with the provisions of [IC 6–1.1] and the regulations of the [DLGF.]" *Id.* at (d)(1) (emphasis added).[5]

■ As mentioned, the DLGF intervened in this cause to express its interpretation of substantial compliance: "[s]ubstantial compliance with [statutory and] regulatory requirements means compliance to the extent necessary to assure the reasonable objectives of the [statute and] regulation are met." (*See* DLGF's Mem. at 1 (citing *Hamill v. City of Carmel,* 757 N.E.2d 162, 165 (Ind.Ct.App.2001), *trans. denied* ).) (*See also* DLGF's Mot. Intervene ¶¶ 5–6.) "An interpretation of a statute [or regulation] by an administrative agency charged with the duty of enforcing the statute [or regulation] is entitled to great weight, unless this interpretation would be inconsistent with the statute [or regulation] itself." *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000) (citing *Indiana Dep't of State Revenue v. Bulkmatic Transp. Co.,* 648 N.E.2d 1156, 1158 (Ind.1995)). Accordingly, determining whether BP's Returns substantially complied with the APCS statutes and regulations depends on whether BP's complete return package [6] substantially under-

---

**5.** The statutes regarding omitted/undervalued tangible property assessments contain similar provisions. For example:

> If a taxpayer files a personal property return for a particular year, personal property which is omitted from or undervalued on the return may be assessed, or its assessed value may be increased, only if the notice required under section 1 of this chapter is given within three (3) years after the date the return is filed. *However, if the taxpayer's personal property return for a particular year substantially complies with the provisions of this article and the regulations of*

> the [DLGF], an assessing official ... may change the assessed value claimed by the taxpayer on the return only within the time period prescribed in IC 6–1.1–16–1.
>
> \* \* \* \* \* \*
>
> If a taxpayer files a fraudulent personal property return, or fails to file a return with the intent to evade the payment of property taxes, the assessment limitations prescribed in subsections (a) and (b) do not apply.

IND CODE ANN. § 6–1.1–9–3(a), (c) (West 2004) (emphasis added).

**6.** "A 'complete return package' consists of the return form itself (Form 102 or 103) ... and

mined the objectives of those statutes and regulations.[7]

 Indiana's personal property tax system is a self-assessment system. *Paul Heuring Motors, Inc. v. State Bd. of Tax Comm'rs,* 620 N.E.2d 39, 41 (Ind.Tax Ct.1993). As a result, the system relies on taxpayers to fully and accurately report their taxable property. *See id. See also* 50 I.A.C. 4.2-2-5. To that end, Indiana Code § 6-1.1-3-9 requires:

> In completing a personal property return for a year, a taxpayer shall make a complete disclosure of all information required by the [DLGF] that is related to the value, nature, or location of personal property: (1) that the taxpayer owned on the assessment date of that year; or (2) that the taxpayer held, possessed, or controlled on the assessment date of that year.
>
> The taxpayer shall certify to the truth of: (1) all information appearing in a personal property return; and (2) all data accompanying the return.

IND.CODE ANN. § 6-1.1-3-9 (West 2004). *See also* 50 IND. ADMIN. CODE 4.2-2-5 (2004).[8]

During the tax years at issue, Indiana Code § 6-1.1-10-12 exempted personal property from taxation if it, *inter alia,* was "part of a stationary or unlicensed mobile air pollution control system of a private ... refining ... facility [and wa]s not primarily used in the production of property for sale [.]" IND.CODE ANN. § 6-1.1-10-12(a)(1)-(2) (West 2004). In turn, Indiana Code § 6-1.1-10-13 provided that:

> The owner of personal property which is part of a stationary or unlicensed mobile air pollution control system who wishes to obtain the exemption provided in section 12 of this chapter shall claim the exemption on his annual personal property return[.] ... On the return, the owner shall describe and state the assessed value of the property for which the exemption is claimed.
>
> The [ ] assessor shall review the exemption claim, and he shall allow or deny it in whole or in part. In making his decision, the [ ] assessor shall consider the requirements stated in section 12 of this chapter.
>
> The [ ] assessor shall reduce the assessed value of the owner's personal property for the year for which the exemption is claimed by the amount of exemption allowed.

IND.CODE ANN. § 6-1.1-10-13 (West 2004) (amended 2008).

**(a)**

The Assessor complains that because BP used "unintelligible" acronyms and "cryp-

---

all necessary supplemental forms and supporting schedules which must be filed with the return." 50 IND. ADMIN. CODE 4.2-2-10(d) (2004).

**7.** As an aside, the Assessor claims that in resolving BP's summary judgment motion, the Indiana Board should have first addressed whether BP's equipment actually qualified for the APCS exemption because that is the "threshold factual issue." (*See* Pet'r Reply Br. at 4, 6-7.) (*See also* Pet'r V. Pet. at 5-6.) The Assessor is incorrect. Whether BP's Returns substantially complied with the APCS statutes and regulations is the threshold issue because the Assessor's ability to assess BP's property is contingent thereon. *See, e.g., Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Miller,* 894 N.E.2d 286 (Ind.Tax Ct.2008) (substantive claim not addressed when party's notice of appeal was untimely filed), *review denied. See also infra* Part (b).

**8.** This regulation requires a taxpayer to "make a full and complete disclosure of such information as may be required by the [DLGF], relating to the value, nature, and location of all [its] personal property" when completing personal property tax returns. 50 IND. ADMIN. CODE 4.2-2-5(a) (2004).

tic codes" to describe its APCS equipment on its Returns, he was unable to discern the "nature" (i.e., how the equipment was used and whether it did, in fact, qualify for the exemption) of the equipment as required under Indiana Code § 6–1.1–3–9 and 50 IAC 4.2–2–5. (*See* Pet'r Br. at 5–7, 19–20; Oral Argument Tr. at 18.) As a result, the Assessor maintains that the Indiana Board erred when it determined that BP's Returns were in substantial compliance with the APCS statutes and regulations. The Assessor is incorrect.

The APCS return forms serve two basic functions: 1) they are the means by which a taxpayer claims the APCS exemption; and 2) they are the means by which an assessor *preliminarily* evaluates whether the exemption claim is proper. (*See* DLGF's Mem. at 2.) Thus, in completing these return forms (and complying with the "nature" requirement), a taxpayer need not provide a description of its property that instantaneously demonstrates to the Assessor that the equipment qualifies for the exemption or how the property is used within the air pollution control system.[9] Rather, a taxpayer simply needs to provide property descriptions that identify the property with particularity. The DLGF even explains that such descriptions may be "brief, generic description[s] of the kind of air pollution equipment

claimed for exemption, such as a filter or scrubber, in addition to an identifier such as an equipment number or other designation that identifies the equipment with particularity." (DLGF's Mem. at 2–3.)

The undisputed facts in this case show that, for each of the years at issue, BP claimed the APCS exemption on the proper personal property tax return forms. *See* 50 IND. ADMIN. CODE 4.2–2–9(b) (2004) (requiring the use of the Form 103–P). (*See also, e.g.,* Cert. Admin. R. 628–47) (BP's 2004 Form 103–Ps). BP applied a variety of descriptors to what *initially* appears to be approximately 1,478 separate pieces of APCS equipment. (*See* Cert. Admin. R. at 628–47, 690–709, 749–69, 781–85, 794–98, 809–13.) BP's Returns, however, clearly demonstrate that while BP assigned different labels to this equipment,[10] its distinct cost and acquisition date data shows that it claimed an exemption on the same pieces of equipment during the 2004 through 2006 tax years. For instance, BP's Returns for Parcel No. 28–800256 show that it claimed an exemption on the same 89 pieces of APCS equipment for each of the years at issue. (*Cf.* Cert. Admin. R. at 781–85 *with* 794–98 *and* 809–13.) Similarly, BP's other Returns show that it claimed an exemption on the same 389 pieces of APCS equipment located on

9. Indiana Code § 6–1.1–10–12 conditions eligibility for the exemption on the manner in which the property is "primarily used" which, in turn, suggests that such property may be put to a variety of uses. *See* IND CODE ANN. § 6–1.1–10–12(a)(2) (West 2004). While 50 IAC 4.2–11–5 provides some guidance as to what property may or may not qualify for the exemption, the regulation also emphasizes that the overall determination depends on *"[t]he specific facts and circumstances of each taxpayer's equipment and operations[.]"* *See* 50 IND. ADMIN. CODE 4.2–11–5 (2004) (emphasis added). Accordingly, a finding in favor of the Assessor as to this issue would create an impermissible arbitrary standard: substantial

compliance means an assessor understands the taxpayer's property description at first blush. Such a standard would also render 50 IAC 4.2–15–11 superfluous, as that regulation advises assessing officials to contact taxpayers in the event that a question arises as to their returns. *See* 50 IND. ADMIN. CODE 4.2–15–11(d)(4) (2004).

10. The APCS equipment descriptions used in each of BP's Returns for the 2005 and the 2006 tax years were nearly identical. (*Cf.* Cert. Admin. R. at 690–709 *with* 749–69.) (*Cf. also* Cert. Admin. R. at 794–98 *with* 809–13.)

that parcel for each of the years at issue.[11] (*Cf.* Cert. Admin. R. at 628–47 *with* 690–709 *and* 749–69 (footnote added).) Furthermore, the fact that BP's deponent could not explain what APCS equipment approximately 11 of its descriptors referenced (even with the aid of a "cheat sheet") does not render BP's Returns substantially noncompliant. (*See* Pet'r Br. at 5–6.) (*See also* Cert. Admin. R. at 944–50, 954–74.) Indeed, substantial compliance, in itself, suggests something less than full compliance. Thus, BP's failure to identify approximately 11 pieces of APCS equipment on a single Return does not mean that either that Return or its other Returns did not *substantially* comply with the "nature" requirement of both Indiana Code § 6–1.1–3–9 and 50 IAC 4.2–2–5. Accordingly, the Court affirms the Indiana Board's conclusion as to this issue, given that it was well reasoned, based on substantial evidence, and consistent with Indiana law.

**(b)**

In the alternative, the Assessor asserts that BP's Returns did not substantially comply with the APCS statutes and regulations due to the significant amount of tax dollars at issue. (*See* Pet'r Br. at 10, 20; Pet'r Reply Br. at 12 (arguing that the amount of BP's purported "misreporting" frustrates the "manifest objectives" of accurate self-reporting and the protection of honest taxpayers).) (*See also* Oral Argument Tr. at 14–17 (claiming that "substantial" means material or considerable "[a]nd that is measured by how much is at issue").) The Assessor further argues that because the APCS statutes do not provide

a time frame by which his audit or denial of the exemption must be completed, his assessments must be permissible. (*See* Pet'r Reply Br. at 13 n. 4.) The Assessor's arguments, however, miss the mark.

■ First, while the time frame in which an Assessor may *audit* a taxpayer's personal property tax returns *is unlimited,* the time frame under which he may *alter* a taxpayer's returns *depends on* a finding of substantial compliance, fraud, or the lack thereof.[12] *See* A.I.C. § 6–1.1–16–1(d) (footnote added). *See also, e.g., BP Prods. N. Am., Inc. v. Bd. of Comm'rs of Lake County,* 812 N.E.2d 139, 143–45 (Ind. Ct.App.2004), *trans. denied.* The statute further provides that should an assessor fail to change an assessment and give notice within the applicable time frame, "the assessed value claimed by the taxpayer on [its] personal property return *is final.*" A.I.C. § 6–1.1–16–1(b) (emphasis added). Finally, Indiana Code § 6–1.1–16–4 instructs that:

> [t]he provisions of this chapter *do not extend* the period within which an assessment or change in an assessment may be made. If a shorter period for action and notice is provided elsewhere in this article, that provision controls. However, if any other conflict exists between the provisions of this chapter and the other provisions of this article, the provisions of this chapter control with respect to the assessment adjustments.

IND.CODE ANN. § 6–1.1–16–4 (West 2004). Statutes related to the same general subject matter are *in pari materia* and should

---

11. The variations as to the number of items claimed for exemption on Parcel No. 28–340093 are minimal. (*Cf., e.g.,* Cert. Admin. R. at 628–47, 690–709 (BP's 2004 and 2005 Returns listing 397 line items per Return) *with* 749–69 (BP's 2006 Return listing 417 line items).) In fact, the majority of the variations in the Returns are related to the dates

that BP acquired the property. (*Cf. e.g.,* Cert. Admin. R. at 690–709 *with* 749–69 (BP's 2005 and 2006 Returns).)

12. The three year window for the assessment of omitted/undervalued personal property is also conditioned on such findings. *See supra* note 5.

be construed together so as to produce a harmonious result when possible. *See Caterpillar Fin. Serv. Corp. v. Indiana Dep't of State Rev.*, 849 N.E.2d 1235, 1243 (Ind.Tax Ct.2005), *review denied.* Thus, it is clear to the Court that the General Assembly intended to condition the time under which an assessing official may alter a taxpayer's personal property tax returns on, *inter alia*, a finding of substantial compliance.[13]

Second, in its appeal to this Court, the Assessor repeatedly suggests that BP's exemption claim was somehow fraudulent, untruthful, or undertaken in bad faith. (*See, e.g.*, Pet'r Br. at 9–10 (alleging that BP's disclosures were "untruthful" because it "misreported" the nature of its APCS equipment), 12 (implying that BP is a dishonest taxpayer).) In contrast, however, the Assessor unequivocally indicated during the Indiana Board hearing that he was not alleging fraud. (*See* Cert. Admin. R. at 1123–24). Furthermore, the designated evidence raises no factual dispute as to the veracity of BP's Returns or that its exemption claim was made in bad faith. (*See* Cert. Admin. R. at 323, 925–87.) Thus, to conclude that BP's Returns failed to substantially comply with the APCS statutes and regulations merely because BP *might* have misunderstood or misinterpreted the exemption requirements would frustrate one of the main objectives of Indiana's personal property tax system: full disclosure and accurate reporting.

Indeed, 50 IAC 4.2–2–10 (which interprets Indiana Code § 6–1.1–37–7) states that "when the *reporting* requirements [are] met, but for some reason the exemption is not allowed, the amount disallowed is an interpretative difference and is not subject to the omitted or undervalued personal property tax penalty." [14] 50 IND. ADMIN. CODE 4.2–2–10(d)(1) (2004) (emphasis and footnote added). This regulation requires a taxpayer to both fully and accurately *record* the required data on its personal property return forms. *See id.* (explaining that "when items that would otherwise qualify for an exemption are omitted from the return, the property is taxable, because the exemption was waived"). *See also, e.g., W.H. Paige & Co. v. State Bd. of Tax Comm'rs*, 732 N.E.2d 269, 271–73 (Ind.Tax Ct.2000) (interpreting Indiana Code § 6–1.1–37–7 and 50 IAC 4.2–2–10). The regulation, however, does not suggest that a taxpayer's inaccurate determination as to its entitlement to a personal property tax exemption is a per se indicator of bad faith, fraud, dishonesty, or a lack of substantial compliance. *See id.* at (a)-(d). Indiana's personal property tax system is not designed to penalize those taxpayers who claim an exemption in error but have nonetheless complied with its recordation

---

**13.** The Assessor's "amount in controversy" argument also invites the Court to adopt a substantial compliance measure lacking ascertainable standards. For example, upon what measure of substantial should this "amount in controversy" argument be based: an assessor's notion of substantial, a taxpayer's notion of substantial, a percentage of the property's overall assessed value, or perhaps a percentage of the overall assessed value of a taxing district's personal property? Furthermore, the measure downplays the emphasis on taxpayer actions, as the focus becomes the amount of tax dollars at issue and not whether a taxpayer purposefully misreported its tax liability. (*See, e.g.*, Oral Argument Tr. at 14–17.) Consequently, the Court declines to adopt such a standard; the decision to create such a standard rests with the General Assembly.

**14.** While Indiana Code § 6–1.1–37–7 and 50 IAC 4.2–2–10 address the imposition of personal property tax penalties, the Court finds them to be of assistance, as they both emphasize the importance of the full disclosure and accurate reporting requirements and reveal what kind of taxpayer actions or reporting errors run afoul of those requirements.

requirements. Consequently (and even assuming that BP's exemption claim was in error), the Assessor has not shown that BP's Returns failed to substantially comply with either Indiana Code § 6–1.1–3–9 or 50 IAC 4.2–2–5.

Finally, the Assessor claims that BP's Returns are not in substantial compliance with the APCS statutes and regulations because he has presented evidence demonstrating that BP's APCS equipment was primarily used to produce a saleable product. (*See* Pet'r Reply Br. at 7–8.) (*See also* Cert. Admin. R. at 929–30 ¶¶ 3–4 (where Muller avers that some of BP's property is "primarily used for the production of a saleable product").)[15] In addition, the Assessor asserts that the fact that BP did not report the assessed value of its APCS equipment on any of its Returns further demonstrates that the Returns did not substantially comply with these statutes. (*See* Pet'r Br. at 11–12 n. 5.) (*See also* Oral Argument Tr. at 7–8.) These arguments, however, simply elevate form over substance.

As explained, a taxpayer's inaccurate determination that its personal property qualifies for an exemption, without something more, is insufficient to support a finding that the taxpayer's returns failed to substantially comply with the APCS statutes in general. *See supra* Part (b). Furthermore, the fact that BP did not report the assessed value of its exempt property on its Returns has no bearing upon a finding of substantial compliance as to these statutes.

Admittedly, Indiana Code § 6–1.1–10–13 requires the assessed value of exempt property to be recorded on a taxpayer's personal property tax return forms. *See* A.I.C. § 6–1.1–10–13(a). The return forms do not, however, evidence a reciprocal requirement. (*See, e.g.,* Cert. Admin. R. at 591–649.) Nevertheless, the personal property tax return forms do require taxpayers to: 1) individually list each item of personal property subject to the exemption including its acquisition date (by month and year), tax life, and cost; 2) calculate the total cost of the property and record that amount on "Line 4, Schedule A, Form 103[;]" 3) and deduct the "[t]otal cost of [the] exempt property" from the "[t]otal cost and base year value of the tangible depreciable personal property." (*See, e.g.,* Cert. Admin. R. at 592, 628–47.) Thus, the forms streamline the statute's directives: on the one hand, an assessor need not alter the return form if he allows the exemption; on the other hand, an assessor may alter the form if he disallows any portion of the exemption. In turn, the assessed value of the non-exempt property may be ascertained from the information recorded on the forms. As a result, substantial compliance with the directives of the forms results in substantial compliance with the assessed value directives of Indiana Code § 6–1.1–10–12.

There is no dispute that BP's Returns listed each piece of property for which it claimed an exemption and included the property's actual cost, acquisition date, and tax life. BP's Returns also demonstrated that it calculated the total cost of its ex-

---

**15.** BP claims that Muller's affidavit is inadmissible pursuant to Indiana Evidence Rule 402 which prohibits the admission of irrelevant evidence. *See* Ind. Evidence Rule 402. According to BP, the only relevant issue is whether its assessments were timely. (*See* Resp'ts Br. at 33.) Muller's affidavit, however, is admissible, as it refers to some of the historical events giving rise to this cause. *See McFarland v. State*, 271 Ind. 105, 390 N.E.2d 989, 993 (1979) (explaining that considerable leeway should be afforded for the admission of facts that simply provide " 'details which fill in the background of the narrative and give it interest, color, and lifelikeness' ") (citation omitted).

empt property, recorded that value on Schedule A, line 4, and excluded the assessed value of that property from its overall assessed value computation. Finally, the information recorded on BP's Returns facilitated the Assessor's subsequent assessments of its property. (*See* Cert. Admin. R. at 325 (finding that the Assessor "simply used the reported costs from BP's Form 103–Ps and multiplied those costs by the percentages specified in Ind. Code § 6–1.1–3–23").) (*Accord* Pet'r Br. at 2 (stating that BP's assessments were increased by the value of the APCS equipment as reported on BP's Returns).) Accordingly, the Indiana Board's conclusion, that BP's Returns substantially complied with Indiana Code and § 6–1.1–10–12 and § 6–1.1–10–13, is proper.

## CONCLUSION

BP's Returns were in substantial compliance with the APCS statutes and regulations, as the evidence in this case indicates that its Returns listed all personal property subject to taxation, provided all necessary acquisition and location data, and used descriptors that allowed its APCS equipment to be identified with particularity upon request. Therefore, the Court AFFIRMS the Indiana Board's grant of summary judgment in favor of BP and its denial of summary judgment as to the Assessor.